# SUPREME COURT.

### EBEN BEAN and HENRY H. VARY, Executors of HENRY BOWEN, deceased, agt. WILLARD BOWEN and others.

*Implied trust to executors in will — declared void with the same clause which is void for illegal accumulation — invalid legacies — valid legacies.*

Although there is no *trust term* granted to the executors in a will, in words, such a term will necessarily be implied where the directions are to sell the real estate and convert all the testator's property into money, and to invest the proceeds for a term of years for the purpose of accumulation, and then to pay certain specified legacies, and thereafter to divide the residue, if any, to other legatees.

Such directions impose active duties upon the executors; *as trustees* of the estate; as much so as though the testator had, in terms, described them as such in the will. They necessarily took the legal title and the right to the possession of the property.

Even as to real estate, courts have implied an estate in the executors as trustees, although no estate was given them in words; and personal property is subject to trusts, as well as real estate.

The clause in the will, which implies this trust estate given to the executors, cannot be sustained. It is limited to five and ten years, and such a term is unauthorized.

The gifts of the legacies which are limited to take effect after a prescribed period of accumulation, and to be paid out of the accumulated fund as a part of the subject-matter of the gifts, being a period too remote, the gifts must fail. Legacies dependent upon a void trust fall with it.

A gift is too remote unless, according to the intention of the testator, some person must necessarily be in existence with legal power to dispose of the property within the period limited by the rules of law.

Gifts in another clause of the will being entirely separable from the void legacies and also from the trust scheme, may be sustained, for the statute against perpetuities only cuts off estates which are limited to take effect after the prescribed limit.

As the trust must be declared void for contravening the statute of perpetuities, the real estate of the testator will descend to his heirs-at-law, and the personal estate must be distributed to the next of kin.

Bean agt. Bowen.

*Special Term, Syracuse, April,* 1874.

ACTION by the executors to obtain the construction of the will of Henry Bowen, deceased.

The provisions of the will are as follows : By the first section the testator gave to his wife the use of all his property during her life, and so much of the principal as might be necessary for her support during her life.

By the second section he gave Minnie Gray $100, payable in one year, and $400, payable within five years after his death, with annual interest at six per cent, to commence one year after his death.

By the third section he gave the Baptist Theological Seminary, located at Rochester, $2,000.

By the fourth section he gave the Crosier Theological Seminary, located at Upland, Pa., $2,000.

By the fifth section he gave the Baptist Theological Seminary, at Chicago, $2,000.

By the sixth section he directed that the three last mentioned legacies should be paid in the order in which they are named.

By the seventh and eighth sections he made specific bequests of books of the value of not exceeding $200.

The ninth, tenth and eleventh sections of the will are in the words following, to wit :

" Ninth. I hereby direct my executors, as soon as convenient after my decease, and that of my wife, Arsinoe K. Bowen, to sell all my real and personal property, except United States bonds and stock in the Skaneateles Iron Works, and invest the proceeds for accumulation ; and the whole amount, including the United States bonds and stock in the Skaneateles Iron Works, shall be held for accumulation for five years. At the expiration of said five years after my decease, said accumulation shall be converted into cash (except the stock in the Skaneateles Iron Works) and the bequests named in this instrument paid, so far as said accumulation shall provide for such payment. The stock in the Skaneateles Iron Works

shall be held five years longer. At the expiration of said period said stock and the accumulations thereof shall be converted into cash and the remaiaing portions of the legacies paid.

"Tenth. I hereby direct my executors, at the final settlement of my estate, provided there are funds sufficient, to give Minnie Gray an additional $500, if, in their judgment, she shall have used the previous bequest in a careful and prudent manner.

"Eleventh. At the final settlement of my estate, all the bequests previously named having been paid, the balance of the estate, if any shall remain, shall be divided equally between the American Baptist Missionary Union, located at Boston, and the American Baptist Home Mission Society, located in New York, and the American Baptist Publication Society, located at Philadelphia."

The will bears date October 16, 1868; the testator died November 13, 1868; the will was admitted to probate on the 28th day of April, 1869.

The heirs and next of kin of the testator put in an answer to the complaint, claiming that the bequests and provisions contained in the *third, fourth, fifth, sixth, ninth, tenth and eleventh* sections of the will are illegal and void, and that they are entitled to the estate of the testator, both real and personal, except the sums bequeathed to Minnie Gray by the second section, and the books specifically bequeathed by the seventh and eighth sections.

It was proved that the testator's personal property was of the value of $5,626.79, including his stock in the Skaneateles Iron Works, which was appraised at $2,250; and that he died seized of real estate, situated at Skaneateles, of the value of $3,000; the value of all his property being $8,626.79.

*Benoni Lee*, for plaintiffs.

*H. L. Comstock*, for the heirs and next of kin.

I. The ninth section of the will is illegal and void.

1. It expressly directs the *accumulation of the income* of nearly the whole of the testator's property for the period of *five years*, and part of it for *ten years*,—not for the benefit of minors, but almost wholly for the benefit of corporations, in direct violation of an express prohibition of the statute (1 *R. S.*, 773, §§ 1, 2, 3; *Dodge* agt. *Pond*, 23 *N. Y.*, 69; *Harris* agt. *Clark*, 7 *id.*, 242; *Gilman* agt. *Reddington*, 24 *id.*, 9; *Kilpatrick* agt. *Johnson*, 15 *id.*, 322).

2. The effect of this section is to work an *illegal suspension of the absolute ownership of the fund set apart for accumulation*.

(*a*) For the purpose of determining the validity of the will, the real estate must be treated as converted into personal property, pursuant to the power in trust contained in the ninth section (*Stag* agt. *Jackson*, 1. *N. Y.*, 206; *Dodge* agt. *Pond*, 23 *id.*, 69; *Chamberlain* agt. *Chamberlain*, 43 *id.*, 424).

(*b*) The powers and duties of the executors are such as to constitute them trustees by *necessary legal implication* (*Vail* agt. *Vail*, 7 *Barb.*, 226; *Craig* agt. *Craig*, 3 *Barb. Ch.*, 76; *Bradley* agt. *Amidon*, 10 *Paige*, 235; *Phelps* agt. *Phelps*, 28 *Barb.*, 121; *Vail* agt. *Vail*, 4 *Paige*, 328; *Brewster* agt. *Striker*, 2 *N. Y.*, 19; *Striker* agt. *Mott*, 2 *Paige*, 388; *Graff* agt. *Bonnett*, 31 *N. Y.*, 9; *Van Nostrand* agt. *Moore*, 52 *id.*, 12; *Kane* agt. *Gott*, 24 *Wend.*, 663: *Knox* agt. *Jones*, 47 *N. Y.*, 396; *Adams* agt. *Perry*, 43 *id.*, 497; *Blakely* agt. *Colden*, 15 *id.*, 617).

(*c*) The interest of each of the legatees, whose bequest is directed to be paid out of the accumulated fund, is a *future* or *expectant* interest; and this is a further reason for implying a trust (1 *R. S.*, 723, §§ 9, 10; *ibid.*, 773, §§ 1, 2; *Gott* agt. *Cook*, 7 *Paige*, 521; *Hone* agt. *Van Schaick*, *ibid.*, 231; *Arnold* agt. *Gilbert*, 3 *Sand. Ch.*, 531; *Field* agt. *Field's Executors*, 4 *id.*, 528; *Butler* agt. *Butler*, 1 *Hoff.*, 244).

(*d*) It is provided by statute that "no person, beneficially

interested in a trust for the receipt of rents and profits of lands, can assign or in any manner dispose of such interest" (1 *R. S.*, 729, § 63).

(*e*) It is now abundantly settled that this provision of the statute applies to bequests of future interests in the income of personal property (*Gott* agt. *Cook*, 7 *Paige*, 521; *Hone* agt. *Van Schaick, ibid.*, 231; *Graff* agt. *Bonnett*, 31 *N. Y.*, 9; *Campbell* agt. *Foster*, 35 *id.*, 361; 1 *R. S.*, 773, §§ 1, 2).

(*f*) The absolute ownership of the fund set apart for accumulation is, therefore, suspended for *five years*, and part of it for *ten years* (*Hone* agt. *Van Schaick*, 7 *Paige*, 231; *Gott* agt. *Cook, ibid.*, 521; *Coster* agt. *Lorillard*, 14 *Wend.*, 262; *Dodge* agt. *Pond*, 23 *N. Y.*, 69; *Harris* agt. *Clark*, 7 *id.*, 242; *Amory* agt. *Lord*, 9 *id.*, 403; *Knox* agt. *Jones*, 47 *id.*, 389; *Field* agt. *Field's Executors*, 4 *Sand. Ch.*, 528).

(*g*) Such a suspension for a definite period, not measured by life, is illegal and void (*Dodge* agt. *Pond*, 23 *N. Y.*, 69; *Hawley* agt. *James*, 16 *Wend.*, 61; *Beekman* agt. *Bonsor*, 23 *N. Y.*, 315; *Boynton* agt. *Hoyt*, 1 *Denio*, 53; *Hone* agt. *Van Schaick*, 20 *Wend.*, 564; *Field* agt. *Field's Executors*, 4 *Sand. Ch.*, 528).

(*h*) It makes no difference that the bequests are for charitable uses (*Adams* agt. *Perry*, 43 *N. Y.*, 437; *Holmes* agt. *Mead*, 52 *id.*, 332; *Bascom* agt. *Albertson*, 34 *id.*, 584; *Yates* agt. *Yates*, 9 *Barb.*, 324).

II. The direction to sell the real estate is *a part of the illegal scheme for suspension and accumulation*, and must fall with it.

1. This direction created a *power in trust*, for the express purpose of having the proceeds of the sale accumulated with the personal property, and ultimately paid over to the legatees, as directed by the same clause which creates the power (*Kinner* agt. *Rogers*, 42 *N. Y.*, 531; *Russell* agt. *Russell*, 36 *id.*, 581; *Skinner* agt. *Quin*, 43 *id.*, 99; *Germond* agt. *Jones*, 2 *Hill*, 569).

Bean agt. Bowen.

2. It is impossible to separate this *trust power* from the *illegal trust scheme*, of which it forms a part.

3. As the trust scheme cannot be carried into effect, but fails, the trust power, designed as a part of the means of carrying out that scheme, must fall with it (*Hawley* agt. *James*, 5 *Paige*, 318; *Bogert* agt. *Hertell*, 4 *Hill*, 492; *Smith* agt. *Claxton*, 4 *Mad.*, 484; *Wright* agt. *Trustees of M. E. Church*, 1 *Hoff.*, 220; *Wood* agt. *Keyes*, 8 *Paige*, 365; *Ackroid* agt. *Smithson*, 1 *Bro. C. C.*, 502; *Crouse* agt. *Bailey*, 3 *P. Wms.*, 22, *Cox's note; Amphlet* agt. *Parks*, 2 *Russ. & M.*, 221; *Hawley* agt. *James*, 7 *Paige*, 219; *Wood* agt· *Cone, ibid.*, 471; *Thompson* agt. *Carmichael's Executors*, 1 *Sand. Ch.*, 397).

III. The real estate is not legally disposed of by the will, and it therefore descended to the testator's heirs-at-law.

1. The purpose of the direction to sell the land being *expressed*, and that purpose being *illegal*, and failing for that reason, there is *no equitable conversion* (*See cases last above cited*).

2. There is no devise of the land as such.

(*a*) The testator did not intend to dispose of the real estate, as such, by the eleventh section of the will.

(*b*) The language of the eleventh section is not sufficient to effect a devise of the real estate, even if there had been no attempt to dispose of it otherwise (*Lynes* agt. *Townsend*, 33 *N. Y.*, 561; 2 *Jarman on Wills*, 741).

3. Assuming that the residuary clause is comprehensive enough, in terms, to include the real estate, or the proceeds of its sale, it is well settled that the residuary devisees or legatees cannot take any part of such real estate, or the proceeds of its sale, which the testator has devised or bequeathed, absolutely, to other persons by other clauses of the will, though such other devises or bequests are illegal and void. (*Gibbs* agt. *Rumsey*, 2 *Ves. & Bea.*, 294; *Van Kleeck* agt. *Dutch Church*, 6 *Paige*, 600; *Same case in error*, 20 *Wend.*, 457; *Green* agt. *Dennis*, 6 *Conn.*, 292; *Williams* agt. *Coade*,

Bean agt. Bowen.

10 *Ves.*, 500; *Cook* agt. *Stationers' Co.*, 2 *Myl. & K.*, 262; *Hawley* agt. *James*, 7 *Paige*, 219; *Jones* agt. *Mitchell*, 1 *Sim. & St.*, 290; *Cox* agt. *Harris*, 17 *Md.*, 23; *Holmes* agt. *Franciscus*, 2 *Bland.*, 546; *Wright* agt. *The Trustees of M. E. Church*, 1 *Hoff.*, 218; *James* agt. *James*, 4 *Paige*, 115; *Tongue* agt. *Nutwell*, 13 *Md.*, 415; *Eyer* agt. *Marsden*, 2 *Keen*, 564; *Lott* agt. *Clottaway*, 3 *Beav.*, 574; *Baker* agt. *Hall*, 12 *Ves.*, 496; *Grosoner* agt. *Hallam*, *Amb.*, 643).

4. The testator has attempted to dispose of the greater part of the proceeds of the sale of the real estate, absolutely, to legatees other than those named in the residuary clause.

5. The legacies are so adjusted, with reference to the accumulated fund, that it is impossible to ascertain how much of the proceeds of the sale of the real estate would fall into the residuum if the scheme of the will were carried out, without carrying that scheme into complete execution, and even then, it could not be known without keeping the proceeds of the sale of the land separate from the rest of the trust fund, which the testator did not contemplate.

6. As it cannot be ascertained how much of the avails of the real estate is devoted to the prior illegal purposes, by reason of the failure' of those purposes, the gift of the remainder is void for *uncertainty in the amount* (*Limbry* agt. *Gurr*, 6 *Mad.*, 151; *Chapman* agt. *Brown*, 6 *Ves.*, 404; *Beekman* agt. *Bonsor*, 23 *N. Y.*, 298; *Skrimsher* agt. *Northcote*, 1 *Swanst.*, 570; *Attorney-General* agt. *Heirxman*, 2 *Jac. & Walk.*, 270; *Attorney-General* agt. *Davis*, 9 *Ves.*, 535; *Floyd* agt. *Baker*, 1 *Paige*, 480).

IV. The ninth section is the *controlling* clause of the will, *determining the scheme of the testator*.

1. It directs the sale of the real estate for the purposes of the will.

2. It directs the *accumulation* of the whole of the testator's property, except $500 given to Minnie Gray by the second section and the books specifically bequeathed by the

seventh and eighth sections, for *five years*, and a part of it for *ten years*.

3. It *fixes the time* for the payment of the legacies given by the third, fourth, fifth, tenth and eleventh sections.

4. It directs that these legacies shall be paid out of the *accumulated fund*, part in five years, and the remainder in ten years.

5. It suspends the absolute ownership of over nine-tenths of the testator's property for five years, and part of it for ten years, without any reference to life.

6. It directs the management and distribution of over nine-tenths of the property in such a way that it is impossible to ascertain that any legatee, whose legacy is payable out of the accumulated fund, has any *definite interest* in any *certain part or proportion* of the principal of the fund set apart for accumulation.

7. It creates a trust in the executors to carry out this scheme, by necessary legal implication.

8. No part of the will, except the second, seventh and eighth sections, can be separated from this scheme, or carried into effect *as the testator intended*, without carrying the whole scheme into complete execution.

V. It is a well-settled principle, that where the disposing scheme of the testator has been substantially defeated, by the failure of the illegal provisions to take effect, the court will declare an intestacy as to the whole of the estate, or so much of it as is inseparably connected with the void parts, though there are parts which, if standing alone, would be valid (*Harris* agt. *Clark*, 7 *N. Y.*, 242; *Knox* agt. *Jones*, 47 *id.*, 389; *Armory* agt. *Lord*, 9 *id.*, 403; *Hawley* agt. *James*, 16 *Wend.*, 61; *Coster* agt. *Lorillard*, 14 *id.*, 265; *Root* agt. *Stuyvesant*, 18 *id.*, 257; *Field* agt. *Field's Executors*, 4 *Sand. Ch.*, 528; *Manice* agt. *Manice*, 43 *N. Y.*, 384; *Van Beuren* agt. *Dash*, 30 *id.*, 426; *McSorley* agt. *Wilson*, 4 *Sand. Ch.*, 515).

VI. The will, or some separate part of it, must take effect,

if at all, *in the way in which the testator intended and directed* (*Adams* agt. *Perry*, 43 *N. Y.*, 487; *Root* agt. *Stuyvesant*, 18 *Wend.*, 257; *Coster* agt. *Lorillard*, 14 *id.*, 265; *Van Kleeck* agt. *The Dutch Church*, 20 *id.*, 457; *Armory* agt. *Lord*, 9 *N. Y.*, 487; *Tucker* agt. *Tucker*, 5 *id.*, 418; *Van Nostrand* agt. *Moore*, 52 *id.*, 12).

VII. The legacies bequeathed by the *third, fourth* and *fifth* sections of the will are so connected with and dependent upon the illegal and void provisions of the ninth section, that they cannot be separated from those illegal provisions, nor paid, according to the testator's intention, without carrying those void provisions into complete execution; and they must therefore fall with the ninth section.

1. These legacies are made payable out of the *accumulated fund*, by the controlling force of the directions contained in the ninth section (*Armory* agt. *Lord*, 9 *N. Y.*, 403; *Van Nostrand* agt. *Moore*, 52 *id.*, 12; *Tucker* agt. *Tucker*, 5 *id.*, 408, *opinion of* RUGGLES, *Ch. J.*).

2. This accumulated fund cannot be legally raised.

(*a*) The personal property cannot be accumulated for the definite periods required by the ninth section (*See point I, and cases cited*).

(*b*) According to the testator's scheme, a large proportion of the fund to be accumulated would be the proceeds of the sale of his real estate.

(*c*) The real estate cannot be sold, nor can the proceeds of its sale be applied as directed by the testator (*See points II and III*).

3. These legacies are not independent of the scheme for accumulation and suspension.

(*a*) The ninth section *fixes the time* for their payment.

(*b*) The time of payment cannot be accelerated, either with or without a rebate of interest (*Phelps* agt. *Phelps*, 28 *Barb.*, 121; *Dodge* agt. *Pond*, 23 *N. Y.*, 69).

(*c*) To disregard the ninth section and give effect to the rest of the will, would render these bequests payable in one

Bean agt. Bowen.

year after the granting of letters testamentary (2 *R. S.*, 90, § 45), and they would then become payable out of the *principal of the personal property alone.*

(*d*) This would absorb the whole of the personal property, leave the real estate to descend to the testator's heirs-at-law, deprive Minnie Gray of any chance of receiving the legacy given to her conditionally by the tenth section, cut off the residuary legatees entirely, and deprive the legatee, named in the fifth section, of the greater part if not the whole of the legacy given by that section.

(*e*) This would not be the execution of an "independent intent of the testator, which is not bound to, nor interwoven with any other part of the will;" but it would be the breaking up of his whole plan (*Field* agt. *Field's Executors*, 4 *Sand. Ch.*, 528).

4. Legacies which the testator has directed should be paid *at a future day*, out of a fund directed to be illegally accumulated, and in great measure out of the proceeds of the sale of real estate and the accumulations thereof, cannot, by judicial construction, be made payable *immediately* out of the principal or capital of the personal property alone (*See point VI, and cases cited*).

5. As these legacies are payable at a future day out of a fund to be accumulated, and in great measure out of *income* to accrue after the testator's death, the interest of the legatees is *future* and *expectant*, and, therefore, *inalienable* (*Hone* agt. *Van Schaick*, 7 *Paige*, 221; *Graff* agt. *Bonnett*, 31 *N. Y.*, 9; *Campbell* agt. *Foster*, 35 *id.*, 361; *Gott* agt. *Cook*, 7 *Paige*, 521; *Arnold* agt. *Gilbert*, 3 *Sand. Ch.*, 531; *Clute* agt. *Bool*, 8 *Paige*, 83; *Butler* agt. *Butler*, 1 *Hoff.*, 244; *De Peyster* agt. *Clendening*, 8 *Paige*, 295; *Field* agt. *Field's Executors*, 4 *Sand. Ch.*, 528).

6. This limitation or suspension cannot be less than five years, and it is not measured by life, and the legatees are not minors.

7. The three sections of the will under consideration, read

in connection with the ninth section, as they must be, suspend the absolute ownership of the whole fund set apart for accumulation for five years, and part of it for ten years ; and this renders the legacies payable out of that fund at the end of the periods of suspension void (*Hone* agt. *Van Schaick*, 7 *Paige*, 221 ; *Dodge* agt. *Pond*, 23 *N. Y.*, 69 ; *Harris* agt. *Clark*, 7 *N. Y.*, 242 ; *Armory* agt. *Lord*, 9 *id.*, 403 ; *Coster* agt. *Lorillard*, 14 *Wend.*, 265 ; *Knox* agt. *Jones*, 47 *N. Y.*, 489 ; *Hawley* agt. *James*, 16 *Wend.*, 61 ; *Beekman* agt. *Bonsor*, 23 *N. Y.*, 315 ; *Gott* agt. *Cook*, 7 *Paige*, 521).

VIII. The legacy to Minnie Gray, conditionally, by the tenth section, is manifestly a part of the illegal scheme for suspension and accumulation, and wholly dependent upon it.

1. It is directed to be paid, if at all, at the final settlement of the testator's estate.

2. The testator did not intend that such final settlement should take place until the expiration of ten years after his decease.

3. The executors are directed to pay this "additional five hundred dollars" to the legatee, "if, in their judgment, she shall have used the previous bequest in a careful and prudent manner."

4. The time which the testator intended to give his executors to make the necessary observations to enable them to form this judgment, is the whole period which should elapse between the time fixed for the payment of the previous bequests and the final settlement of his estate at the expiration of ten years after his death.

5. This bequest is, therefore, *contingent* as well as *future*.

6. It is limited to take effect, if it shall ever take effect, at the expiration of ten years after the testator's death.

7. Such a limitation of a future *contingent* interest, for a definite period, is clearly void.

8. The tenth section is subject to all the objections which have been urged against the third, fourth and fifth sections.

9. Unless the ninth section shall be fully executed there is

Bean agt. Bowen.

no possibility of paying this legacy, no matter how carefully and prudently the legatee may use the previous bequest.

IX. The eleventh section of the will is also a part of the illegal scheme, and it cannot be separated from it.

1. The distribution is directed to be made at the final settlement of the estate, after all the other legacies shall have been paid.

2. The testator did not intend that this settlement should be made until the expiration of ten years after his death; and, if all the provisions of the will were carried into effect, it could not take place sooner.

3. "The balance of the estate," which the testator intended to give to the residuary legatees, is the balance of the accumulated fund at the end of the second period of suspension, after all the other legacies should be paid in the manner and at the times provided for in the ninth section.

4. This section is subject to all the objections against the third, fourth, fifth and tenth sections.

(a) The bequests are future and expectant, and dependent upon the accumulation of the trust fund.

(b) The residuary legatees may, or might, if the will were valid, take the $500 bequeathed by the tenth section, in case Minnie Gray should not prove to be entitled to it, and this contingency cannot be determined until the trust term expires.

(c) These bequests being *future* and payable out of a fund to be accumulated, the interests of the legatees are inalienable, and the absolute ownership of the fund is suspended.

(d) This suspension is unlawful, and the bequests are void, and none the less so because they are of "the balance of the estate," for the testator could no more violate the law by the residuary bequests than by any other provision of the will (*Vail* agt. *Vail*, 7 *Barb.*, 226; *Dodge* agt. *Pond*, 23 *N. Y.*, 69).

(e) Unless the directions contained in the ninth section shall be carried out, the eleventh section cannot take effect as the testator intended.

*Geo. W. Rawson*, for certain legatees.

I. That only the *direction to accumulate* is void. That the will may take effect, discharged from the *direction* to accumulate. No provision of the will is dependent upon the accumulation, and the effect of the accumulation would simply be to increase the amount going to the residuary legatees.

The general scheme of the will will not be substantially affected by declaring the direction to accumulate void (*Dodge* agt. *Pond*, 23 *N. Y.*, 69; *Kilpatrick* agt. *Johnson*, 15 *N. Y.*, 322; *Kane* agt. *Gott*, 24 *Wend.*, 641; *Williams* agt. *Williams*, 8 *N. Y.*, 525; *Manice* agt. *Manice*, 43 *N. Y.*, 303; *Harrison* agt. *Harrison*, 36 *N. Y.*, 543).

In these cases the courts sustained the provisions of the will, although declaring the direction for accumulation void. I think it will be found on a careful examination of these cases, and others, that this case is clearly within these decisions.

II. There is no express trust created by this will.

The powers conferred upon the executors by this will are not such as require that a trust shall be implied. None of the duties imposed upon them are such as to make it necessary that they should take any legal estate, and no trust, therefore, arises by legal implication.

No legal estate will ever be implied, unless such estate is essential in order to carry out the provisions of the will (*Coates* agt. *Cook*, 3 *Burr.*, 1685, 5th of *B. & A.*, 785; *Reed* agt. *Executors of Fisher*, 12 *Barb.*, 113).

(*a*) There is nothing in this case which makes it necessary that any trust shall exist in the executors. Every duty imposed upon them by the will may be performed by a simple power, such as is given them in this will. They have no control over the real estate or the rents and profits as such. They simply have a power to sell it, and this gives them no legal estate and requires no trust whatever (*Reed* agt. *Fisher*, 12 *Barb.*, 113).

The widow takes the real estate for life; upon her death

Bean agt. Bowen.

the executors are empowered to sell it; the whole then becomes personal estate, which they are directed to invest for accumulation until the time of division arrives.

There is not a single duty imposed that cannot be performed under the simple power given by the will.

(b) To establish this trust is an important matter for the contestants, and, unless they can maintain it, their main argument fails entirely. Let us therefore examine the authorities by which they seek to establish " a trust by implication." From a careful examination of all these authorities I am entirely confident they do not apply to this case, and do not sustain the position of the contestants' counsel.

The case of *Knox* agt. *Jones* (47 *N. Y.*, 389) was a case of express trust, and, of course, does not apply. The cases of *Brewster* agt. *Stryker* (2 *N. Y.*, 19) and *Stryker* agt. *Mott* (2 *Paige*, 387) were cases where the testator had declared that his *real estate* should be under the *charge, management* and *disposition of his executors.* That the same should not be *sold or aliened ;* but his executors and the survivor of them should lease the same, receive the rents and profits, and pay them over to certain of the devisees annually, and with power to *lease to the devisees.* The court held that the will gave the executors such control over the real estate as necessarily required that they should hold the legal title, and hence a trust must be implied.

So in the case of *Bradley* agt. *Amidon*, the court held that the will gave the executor a control over the *lands, rents* and *profits*, which *necessarily required* that he should hold the *legal title*, and hence a trust must be implied.

All these cases are widely different from this, and I think the contestants' counsel will search in vain for a case like this, one in which the court has ever held that the executor necessarily took the legal title.

III. There is no suspension of the absolute ownership of personal property by this will.

There being no trust, express or by implication, the legatees

take a *present vested interest* in the legacies given them in and by the will. The interests of the legatees are not inalienable.

The time of payment only is postponed. This is not illegal and does not suspend at all the absolute ownership of the property (*Burrill* agt. *Sheil*, 2 *Barb.*, 470 ; *Kane* agt. *Gott*, 24 *Wend.*, 641; *Dodge* agt. *Pond*, 23 *N. Y.*, 69). In the case of *Dodge* agt. *Pond*, judge SELDEN, speaking of what the testator has a legal right to do, says : "He may give vested legacies and provide for their payment at a future day," and then he proceeds to show that the absolute ownership is not suspended in such a case.

The legacies in this case were vested beyond question (*Patterson* agt. *Ellis*, 11 *Wend.*, 259 ; *Hone* agt. *Van Schaick*, 20 *Wend.*, 564). There is therefore no suspension of the absolute ownership of property in this case.

The effect of the provision of the ninth section of this will, if carried out, would be, what judge SELDEN says it would be, in the case of *Dodge* agt. *Pond*, at page 83 : "*Its effect would be simply to increase slightly the ultimate fund to be distributed among the residuary legatees.*" If declared illegal and not carried out, the only effect would be to diminish that fund.

IV. There is no difficulty in carrying out the general scheme of the will and declaring the direction for accumulation void. The court held, in *Kane* agt. *Astor* (5*th of Sand.*, 467), that it is a paramount principle that the court shall carry out the general intent of the testator ; and where a particular word, sentence or provision is repugnant to the general intent and design of the whole will, such word, sentence or provision must give way, rather than sacrifice the whole scheme of disposition disclosed by the general tenor of the instrument.

This is in harmony with numerous decisions of the courts, and this brings us to the inquiry—what was the general scheme in the testator's mind, as appears by the will itself?

1. That the whole income of his estate should go to his wife for her support during her natural life.

2. That upon her death all his property, with the exception of $500 to Minnie Gray, should go to the benevolent objects therein stated.

3. That the bulk of all his property should go to the three institutions named in the third, fourth and fifth clauses of his will; and, in case his property for any reason should not be sufficient to pay these in full, he provides in the sixth clause that those three legacies shall be paid in the order in which they stand.

4. If there was any residue after paying those legacies, it should go to the institutions named in the residuary clause, leaving with the executors a discretion as to whether Minnie Gray should receive an additional $500, if the property should be sufficient.

This was manifestly the general scheme and intent in the mind of the testator. The provision, that the executors should hold it for distribution and in the meantime for accumulation, instead of being the foundation of the scheme and the pivot on which everything else turns, it was a *mere incident* to the scheme itself. It was simply *his way* of *distribution* and settlement of the estate.

Can it with any justice or even plausibility be said that the scheme of the will fails and that the intention of the testator cannot be carried out because it cannot be done in just the way he intended, because the residuary legatees will receive somewhat less than they otherwise would?

In all the cases to which I have referred and others, where the court has held the direction to accumulate void, and yet has sustained the will, of course the intention of the testator was not fully carried out; but I have not found a case in which they did not carry out the general intention of the testator, wherever it could be done, although the direction to accumulate was declared void.

The property in this case amounts, as appears by the com-

plaint, to $8,626.79. Giving Minnie Gray her $500, we have left $8,126.79. Paying the next three legacies of $2,000 each, we have still remaining $2,126.79; and, if the additional $500 is paid to Minnie Gray, there will remain $1,626.79 to go to the residuary legatees.

Why will not this carry out the intention of the testator? True, the residuary legatees will receive some less than they would if the accumulation were valid.

Conceding the proposition of the counsel that some part of the will must take effect according to the intention of the testator, and we say that the main provisions of this will can be carried out according to his intention.

The direction to sell the real estate in this case is not void.

The provision for accumulation did not render the sale necessary. The real estate might have been held for accumulation without sale. The sale was necessary in order to pay the legacies, and is in no way illegal.

The counsel for the contestants in this case claims that the real estate must be regarded as converted into personal property, and the whole fund must be treated as personal property, and the questions arising must be determined by the law applicable to personal property; and yet, again, he claims that the power to sell must be held to be a part of the illegal scheme, and void.

If so, then there has been no sale of the real estate, and it is not converted into personal property.

The policy of the law is that wills shall be favored and sustained, and courts will see to it that the intention of a testator is not defeated in any case where it can be substantially carried out.

In this case the testator had no lineal descendants. He was a clergyman, and his intention was that his property should go to these benevolent objects.

The court will carry out that intention where it can so manifestly be done in harmony with the well-defined principles of law and equity.

*A. B. Capwell,* for other legatees.

*First.* It is plain that it was the intention of the testator, by his will, to dispose of his entire estate, real and personal.

And it is also plain that he intended to give his entire estate, after the decease of his wife (who died before him), to Minnie Gray and the six corporations named.

This intention should be respected and carried into effect, if it can be done without clearly violating the rules of law applicable to such cases.

*Second.* The real estate has been sold by the executors for $3,000, and the personal property was appraised at $5,626.79, making a total of $8,626.79.

The specific legacies or bequests amount to $7,000, thus leaving a small sum to be distributed to the residuary legatees.

I. The several legacies or bequests in sections second, third, fourth and fifth are direct gifts to Minnie Gray and the societies named; and as the estate of testator was sufficient to pay them in full, it could not have been, it was not, his intention that they should take any part of the accumulation provided for in the ninth section.

II. It is clear, therefore, that if the ninth section, or so much thereof as provides for an accumulation, shall be declared void, still the intention of testator can be carried into effect as to the whole of his estate; only the residuary legatees will receive less in amount, but at an earlier day.

III. Counsel for the heirs admits that Minnie Gray is entitled to the $500 in the section second; and yet the objections urged against the remaining bequests would seem to be quite as applicable to that.

*Third.* The residuum or "balance of the estate" is given directly and absolutely to the three societies named in the eleventh section; the division to be made "at the final settlement of the estate," whenever that may be.

I. It is true the accumulation mentioned in the ninth section, if legal, would add to the amount these residuary legatees

Bean agt. Bowen.

would receive at the times therein mentioned; but the direction for accumulation is clearly void.

II. This being a direct gift of personal property and of its income to be accumulated, after or upon a future event certain, *without any trust,* the accumulation being illegal, the residuary legatees will take the income presently, and as it accrues (SUTHERLAND, J., *in Lovett* agt. *Kingsland,* 44 *Barb.,* 575).

III. And it is upon this principle that Minnie Gray can take under the second section.

*Fourth.* These defendants, therefore, submit that the several bequests in this will should be declared valid, and that only so much of the ninth section as is in conflict with the law against accumulations, be declared void.

MORGAN, J.—There is no dispute as to the facts of this case. The testator's estate was of the value of about $8,626.74; his real estate, consisting of a house and lot, was of the value of $3,000. He bequeathed the use of his real and personal estate to his wife, in case she survived him, during her natural life, and so much of the principal as might be necessary for her comfortable support. He then gave legacies of $100 and $400 to Minnie Gray, which are admitted to be valid. Next he gave legacies of $2,000 each to three theological institutions, to be paid in the order named. Next he gave specific legacies of certain books to two institutions named, of no great value. As these legacies amounted to $6,500, the personal estate, liable to be diminished by the bequest to the testator's wife, would not be sufficient to pay them, unless it were suffered to accumulate according to the directions of the testator in the ninth clause, or unless it should be increased by adding to it the proceeds of the sale of the real estate. The testator, however, made ample provision for the creation of a fund sufficient to pay these legacies; and, anticipating a residue, made provision for the disposition of that also.

His wife having died prior to his death, no question can

arise as to the bequest to her. Nor is it perceived how the bequest of a life estate to her can affect the validity of the subsequent provisions of his will.

It might have been an interesting inquiry, if she had survived the testator, to ascertain in whom the reversion of the real estate vested; because it was not devised, in terms, to any one, and it certainly could not be in abeyance, awaiting the action of the executors to convert it into personalty.

The whole question in dispute arises out of the provisions of the ninth clause of the will. By that clause the executors are directed, as soon as convenient after the death of the testator and his wife, to sell all his real and personal property, except his United States bonds and his stock in the Skaneateles Iron Works, and invest the proceeds for accumulation, and to hold the whole amount, including the bonds and stock, for accumulation for five years. The executors are then directed, after the expiration of said five years, to convert the said accumulation into cash (except the stock in the Skaneateles Iron Works), and to pay the three legacies of $2,000 each to the three theological institutions in the order named, so far as said accumulation shall provide for such payment. They are directed to hold the stock in the Skaneateles Iron Works five years longer; and, at the expiration of that period, the said stock and the accumulations thereof are to be converted into cash by the executors, and the remaining portion of the three legacies above mentioned paid. Afterward, on a final settlement of the estate, if there are sufficient funds, the executors are required to give Minnie Gray an additional $500, if in their judgment she shall have used the previous bequest in a careful and prudent manner; and the residue, after payment of all the previous bequests, the executors are directed to divide equally between three religious societies therein named.

It will therefore be seen that, as to the real estate, the testator, without any words of gift or devise, clothes his executors

with a power of sale, and they are to take the proceeds as personal property.

After realizing the cash from a sale of the real and personal property, they are directed to hold it five years for accumulation, and then convert it again into cash and pay the three legacies of $2,000 each in the order named, so far as said accumulation shall provide funds for that purpose. Of course this fund must be under the control of the executors, and must be invested, collected and reinvested in their names.

In my opinion the authority given to sell the real estate is a power *in trust*, and the proceeds of the sale of both the real and personal property are by necessary implication given to the executors, *in trust*, to manage for the purpose of raising a fund out of which to pay the $6,000 in legacies, limited to take effect after five years; and the contingent legacy to Minnie Gray, and the residuary legacies, to take effect, if at all, after a term of ten years.

It is admitted that the direction for accumulation must be regarded as illegal and void. In that case the annual income would belong to the next of kin or the residuary legatees. If it should be determined that it belonged to the *residuary legatees*, the testator would succeed in evading the statute, for he would be allowed to do indirectly what he is not permitted to do directly.

A great many questions may arise out of the peculiar provisions of this will which it will be unnecessary to determine, as I have arrived at certain definite results which will dispose of the case and which I will proceed to state.

(1.) Although there is no *trust term* granted to the executors, in words, such a term is necessarily to be implied. The directions to sell the real estate and to convert all his property into cash (with certain exceptions), and to hold the proceeds for a term of five years, with directions to invest the same in the meantime, and after payment of certain legacies to hold his stock in the Skaneateles Iron Works five years

longer, and after paying the balance of the three legacies of $2,000 each, to divide the residue, which they may diminish by an exercise of discretion in giving another $500 to Minnie Gray, impose upon the executors active duties as trustees of his estate, as much as though the testator had, in terms, described them as such. The executors necessarily took the legal title and the right to the possession of the property, if the directions of the testator can be sustained according to his manifest intention. Even as to real estate, courts have implied an estate in the executors *as trustees*, although no estate was given to them in words (*Perry on Trusts* § 313; *Hill on Trustees*, 231, 239; *Brewster* agt. *Striker*, 2 *N. Y.*, 19). And certainly there is no reason why the executors should not be deemed to have the legal title to the personal estate when similar duties are enjoined upon them (*See Knox* agt. *Jones*, 47 *N. Y.*, 396). Personal property is subject to trusts as well as real estate, and the statute of perpetuities can no more be violated in the disposition of personal property than of real estate.

(2.) The trust estate given to the executors cannot be sustained. It is limited to five years and ten years, and such a term is unauthorized (*Hone* agt. *Van Schaick*, 7 *Paige*, 233)..

(3.) The gifts of the three legacies of $2,000 each are limited to take effect after a prescribed period of accumulation, and to be paid out of the accumulated fund as part of the subject matter of the gifts. The period being too remote, the gifts must fail (*Perry on Trusts*, § 396). Legacies dependent on a void trust fall with it (*Arnold* agt. *Gilbert*, 3 *Sand. Ch. R.*, 531; *Armory* agt. *Lord*, 9 *N. Y.*, 403).

A gift is too remote, unless, according to the intention of the testator, some person must necessarily be in existence with legal power to dispose of the property within the period limited by the rules of law (*Curtis* agt. *Lunkin*, 5 *Beav.*, 147; *Palmer* agt. *Holford*, 4 *Russ.*, 403). If the trust exceed this boundary, it is void *in toto*, and cannot be cut down to the legitimate extent (*Lewin on Trusts*, 71, 72).

The gifts in the second clause, of $100 and $400 to·Minnie Gray, are entirely separable from the legacies subsequently ·given, and also from the trust scheme, and may be sustained; for the statute against perpetuities only cuts off estates which :are limited to take effect after the prescribed limit (DENIO, J., *in Post* agt. *Hover*, 33 *N. Y.*, 598).

·(4.) As the trust must be declared void for contravening ·the statute of perpetuities,.the real estate of the testator will ·descend to his heirs-at-law (1 *R. S.*, 723, § 14; *Post* agt. *Hover*, *supra*, 599). And of course the personal estate must be distributed to the next of kin:

(5.) These conclusions have been arrived at, although the decisions cited by the counsel for the legatees clearly show ·that in construing wills the court is at liberty to reject the ·direction for accumulation. If there was a valid trust, the gift might take effect by rejecting these directions; but the difficulty is, that the trust is in direct contravention of the statute of perpetuities, and the legacies of $2,000 each, as well as the contingent legacy, are only to take effect upon the termination of a trust which is void. If the gifts are paid, they must be paid by the executors after five and ten years, for the period cannot be shortened; and they cannot be paid out of the fund provided for that purpose by the testator, but in due course of administration. This would entirely defeat the scheme devised by the testator for the disposition of his estate; and I do not think the courts are at liberty to strike out the trust term, as well as the directions for accumulation, for the purpose of paying legacies which are made dependent upon it. This would not be carrying out the will of the testator, but, in effect, making a new will.

If I am right in these conclusions, the result will be that ·the executors had no authority to sell the real estate for the purpose of creating a fund as directed by the testator; nor was there any valid conversion of the real into personal estate. It was not the intention of the testator that the real estate should be converted into money for the purpose of distribu-

Bean agt. Bowen.

tion among his next of kin. There could be no conversion legally effected for the purpose of funding the *trust estate;* and no other object was contemplated in authorizing a conversion.

The bequests to Minnie Gray of $100 and $400 are valid and should be paid out of the personal estate. The specific bequests of books in the seventh and eighth clauses of the will are also valid. The other legacies must fail with the void trust, upon the termination of which they were to take effect. Judgment must be entered accordingly.