Thomson agt. Thomson *et al.*

# SUPREME COURT.

## Ellen L. Thomson agt. James Thomson *et al.*

*Will — Construction of statutes — Testamentary guardian — consent of mother — Trusts of real and personal estate — legal title — void devise.*

Although, at common law, the father had the paramount right to the custody and control of his minor children, yet his power to make a *testamentary* disposition of their guardianship, is derived exclusively from the *statutes*.

The provisions contained in section 6 of the act of April 10, 1862, declaring that no man shall create any testamentary guardianship of his child, unless the mother, if living, shall, *in writing*, signify her assent thereto, is repealed by chapter 32, Laws of 1871, page 39.

The amendment of 1871 covering the subject-matter, was intended to dispense with the consent of the mother to a testamentary appointment by the father, and to reinstate the father in his unqualified right to appoint a testamentary guardian for his minor child, as it existed under the Revised Statutes of 1830, part 2, chapter 8, title 3, section 1.

When the provisions of two statutes are manifestly repugnant, the earlier enactment is impliedly modified or repealed (*In addition to the cases cited below, vide People ex rel. Ross* agt. *The City of Brooklyn*, 69 *N. Y.*, 605 ; *People ex rel. Canj. Nat. Bank* agt. *Bd. Suprs. Mont. Co.*, 67 *N. Y.*, 109).

Where a testator devised to the executors, etc., of his will all his real estate in trust, to sell the same whenever they should deem a sale thereof expedient and proper ; to collect the rents, issues and profits thereof ; to repair and improve the same out of his personal estate, and the rents of his real estate, or the proceeds of the real estate sold, and generally to manage, control and dispose of the same as they shall see fit, and they were authorized in their discretion to lease or purchase, in their own name, residences to be used and occupied until the death of his wife:

*Held,* that the executors were vested with the legal title to the estate; that the intention to clothe them with the legal title is shown by the express words of gift, and the duties and responsibilities imposed.

When the testator declared that all the rest, residue and remainder of his estate, after the payment of debts and legacies, should be equally divided among his wife and children, as is thereafter in the will provided, and

Thomson agt. Thomson *et al.*

afterwards in the will directed that one-quarter of the proceeds of such sale of his real estate should be paid over to his wife, and the remaining three-quarters to be equally divided among his children, share and share alike, the executors were directed to invest the three-quarters upon bond and mortgage, and to pay over the income and profits to the guardians of his children for their support and maintenance.

*Held*, that it was the intention of the testator that the power of sale should be exercised within the lifetime of his widow, and that the trust as to her share would terminate at her death.

That, until a sale of the real estate, the widow should receive her proportion of the rents and profits from the trustees, and that the children's portion should be paid to the guardians ; the same persons being constituted trustees and guardians under the will.

Also, *held*, that the trust in the executors, which was not to continue beyond the life of the beneficiary, was valid.

When there are no words of gift except as involved in the words " equally divided among," these words sufficiently dispose of the interest intended to be disposed of (*Clancy* agt. *O'Gara*, 4 *Abb. N. C.*, 268, 271).

Where a testator gave to his three minor children certain portions of his estate, to be paid to them when they should severally attain the age of twenty-one years, and provided that in case of the death of either child before arriving at the age of twenty-one years, without issue, the share to which the child so dying shall be entitled, shall go to the survivors or survivor of the children and the issue of a deceased child, and afterwards in the will gave to his brothers and sisters the shares of his children, in the event that they should all die without issue, before arriving at the age of twenty-one:

*Held*, that, as the consummation of the gifts to the brothers and sisters of the testator depended upon the termination of more than two lives in being at the death of the testator, they are illegal and void ; but that the provisions in favor of the brothers and sisters could be dropped, without disturbing the valid disposition of the will.

*Special Term, New York, February*, 1876.

ACTION for a construction of the will of William Thomson, deceased, and to annul the appointment of testamentary guardians, made by the testator for his minor children.    The portions of the will concerning which questions for construction arose were as follows :

Seventh.    All the rest, remainder and residue of my estate, (after payment of my debts and said legacies ) whether real

or personal and the proceeds, income, rents, issues and profits thereof, shall be equally divided among my wife, Ellen L. Thomson, and my three children share and shares alike, as is hereinafter provided.

Eighth. I appoint my wife, Ellen L. Thomson, and my brothers James Thomson and David Thomson the survivor or survivors of them, the testamentary guardians of my children respectively, with full powers to direct their education nurture and maintenance, and to receive, invest and expend the income, avails and proceeds of the respective shares of my said children, in and to my estate, as may be in their judgment expedient. As my wife will probably be charged with the principal expenditure and care of the funds to be paid out for the maintenance, support and education of my children, during their minority, it is my will that my brothers James or David shall not in any event be held responsible for the manner or details of such expenditure, and that the indorsement of my said wife upon any cheques drawn by the said testamentary guardians for the purpose aforesaid, or her receipt for any moneys delivered to her for that purpose, shall be a full and conclusive indemnity to the others of said guardians, against all accountability or responsibility whatever, by reason of such payment or the method of its appropriation.

Ninth. I give and devise to the executors and executrix of this my will, all my real estate, wheresoever situate, in trust, to sell the same, whenever they shall deem a sale thereof expedient and proper, and to execute good and sufficient deeds to purchasers upon any sale thereof, or of parts thereof, to collect and receive the rents, issues and profits thereof, to repair and improve the same, out of my personal estate, and the rents of my real estate, or the proceeds of my real estate sold, and generally to manage, control and dispose of the same, as they shall see fit. I direct that during the life of my wife the Madison avenue house, and the house and land at Lenox, Massachusetts, and the furniture therein, respectively, shall be reserved and appropriated for a residence for my wife and

Thomson agt. Thomson *et al.*

our children, so long as she and they shall remain unmarried, and my executors are hereby authorized and empowered to lease, or in their discretion to purchase, in their name, other, residences in the city of New York, or elsewhere, to be used and occupied until the death of my said wife, and also during such period to renew and replace, as may be suitable, the furniture in such house, and to pay all taxes and assessments at the expense of my general estate.

Tenth. In case of any sale of any of my real estate, I direct one-quarter of the proceeds of such sale to be paid over to my wife, Ellen L. Thomson, and the remaining three-quarters to be equally divided among my children share and share alike. And I direct my executors to invest the last three-quarters of such proceeds upon bond and mortgage ( each one-quarter separately ) as they shall deem advantageous, and pay over the income and profits thereof, to the guardians of my said children, to be by them appropriated or invested, as far as necessary, for the maintenance, support and education of my said children respectively. The remainder and residue of my personal estate, after payment of my debts, and the legacies above provided for, shall be equally divided into four parts, one-fourth part of which shall be paid to my wife within two years after my death, and the remaining three-fourths shall be separately invested for the benefit of my respective children, upon bond and mortgage, on unincumbered real estate in the counties of New York, Kings and Queens, in the state of New York, and the income thereof shall be paid to the guardians of my children as above provided.

Eleventh. When my children shall respectively attain the age of twenty-one years, the share to which each one of them is entitled under the provisions of my will, with all accumulations thereof, shall be paid over to the child so attaining the age of twenty-one years. In case any other child or children shall be born to me after this my will, I direct that all my property, real and personal shall be equally divided, by a division equaling the whole number of my wife and children,

( and their issue *per stirpes* if any shall be dead ); and each of my said children ( and their issue *per stirpes* in case of the death of any of them ) and my wife shall receive the equal quantity thereof, respectively, in the same manner, and to the same effect as is hereinbefore provided as to the quarter shares herein bequeathed to my wife and existing children respectively.

Thirteenth.   In case of the death of either of my children before arriving at the age of twenty-one years without issue, the share to which the child so dying shall be entitled under this my will, shall go to the survivors or survivor of my said children, and the issue of such as shall be dead, *per stirpes*, in equal shares.

Fourteenth. · If either of my children shall die before the time of my death, leaving issue, then the share herein given to said child shall go to his issue *per stirpes*.

Fifteenth.   If all my children shall die before arriving at the age of twenty-one years, without issue, then the shares of my said estate, to which my said children shall be entitled under this my will, shall go to my brothers and sisters, and the survivors and survivor of them, and to the issue of such of them as shall be dead, *per stirpes*, share and share alike.

*Tracy, Olmsted & Tracy* and *Theodore W. Dwight*, for plaintiffs.

*Aaron J. Vanderpoel*, for defendants.

Van Vorst, *J.* — William Thomson, the testator, whose will is under consideration, died on the 13th day of January, 1872, leaving · him surviving the plaintiff, his widow, and three children, sons, all infants under the age of twenty-one years.   By the second clause of his will, bearing date December 14, 1871, the testator appointed his wife and his brothers, James and David, executors and executrix thereof, and by the eighth clause appointed the same persons the survivors

and survivor of them, the testamentary guardians of his three infant children.

Subsequent to the death of the testator, the wife and brothers have acted as such guardians.

The appointment, by the testator, of testamentary guardians for his children, is now claimed by the plaintiff to be void, upon the ground that she had not, *in writing*, during her husband's life, signified her assent thereto.

As the power of the father to dispose of the custody and tuition of his children, during their minority, is derived from the statutes, the validity of the appointment, made by him, depends upon its conformity to the provisions of the statutes.

Although, by the common law, the father has the paramount right to the custody and control of his minor children, yet it is generally believed that he could not make a testamentary disposition of their guardianship.

This power is derived exclusively from the statute.

The Revised Statutes of 1830 (*part* 2, *ch.* 8, *title* 3, *sec.* 1) provides as follows:

"Every father, whether of full age or a minor, of a child likely to be born, or of any living child, under the age of twenty-one years and unmarried, may, by his deed or last will, duly executed, dispose of the custody and tuition of such child, during its minority or for any less time, to any person or persons in possession or remainder."

This section was a substantial re-enactment of the provisions on this subject of the Revised Laws of 1813 (*p.* 368), and which were derived from the statute of 12 Ch., 2 (*chapter* 24, *secs.* 8, 9, 10, 11).

March 20, 1860, an act was passed by the legislature, entitled "an act concerning the rights and liabilities of husband and wife."

Section 9, of that act, provides " that every married woman is hereby constituted and declared to be the joint guardian of her children, with the husband, with equal powers, rights and

duties in regard to them with her husband" (*Session Laws of* 1860, *chap.* 90, *p.* 159).

By the act of April 10, 1862, the foregoing section, contained in the act of 1860, was repealed, but by section 6 it was provided that "no man shall bind his child to apprenticeship, or part with the control of such child, *or create any testamentary guardian thereof*, unless the mother, if living, shall, in writing, signify her assent thereto" (*Laws of* 1862, *chap.* 172, *p.* 343).

On the 10th February, 1871, before the death of the testator, an act was passed, entitled "an act to amend the first section of the third title of the eighth chapter of the second part of the Revised Statutes, in relation to the custody of minor children." It is in these words:

"Section 1. Every father, whether of full age or a minor, of a child likely to be born, or of any living child under the age of twenty-one years and unmarried, may, by deed or last will duly executed, or in case such father shall be deceased and shall not have exercised his said right of appointment, then the mother, whether of full age or a minor, of every such child, may, by her deed or last will duly executed, dispose of the custody and tuition of such child during its minority, or for any less time to any person or persons in possession or remainder" (*Laws of* 1871, *chap.* 32, *p.* 39).

An examination of the text, shews that the amendment of February 10, 1871, is, in effect, a re-enactment of the provisions of the statute of 1830, first above set forth, conferring, however, upon the mother, the right of appointment by last will and testament, in the event that the father shall have died without exercising it.

The validity of the appointment made by the testator under consideration, depends, in the first place, upon the question as to whether or not section 6 of the act of 1862 has been repealed or is still in force.

Repeals by implication are not favored. But when the

provisions of a later statute are opposed to those of an earlier, the earlier statute is considered as repealed.

Where the provisions of two statutes are manifestly repugnant, the earlier enactment will be impliedly modified or repealed (*Broom's Legal Maxims, page* 29 *and cases cited*).

I think such repugnance exists between the two enactments in question.

The amendment of 1871 was intended to dispense with the consent of the mother, to an appointment by the father, and to reinstate the father in his unqualified right to appoint a testamentary guardian for his minor child, or children.

The legislative expression is clear and distinct. It declares that the father may in this manner dispose of the custody and tuition of his minor child. There is no condition imposed, that the validity of his appointment shall depend upon the consent in writing of the mother.

If the right to make such appointments, after the passage of the amendment was to be dependent upon the consent in writing of the mother, it is but reasonable to conclude, that the legislature, having the principal statute in relation to the custody of minor children under consideration, would have then, by proper words, saved the provisions of section 6 of the act of 1862.

I am of opinion that the latter statute covers the subject-matter, and was intended as a substitute for all former provisions on the subject (*Mongeon* agt. *People of the State of New York*, 55 *N. Y. R.*, 615; *The Dexter and Limerick Plank Road Co.* agt. *Allen*, 16 *Barb.*, 15).

The repugnancy to which allusion has been made, consists in this, that the amendment of 1871 gives the absolute right of appointment to the father, by his last will and testament, and that, too, after previous legislation qualifying the right. The qualification, making the father's right dependent upon the consent of the mother, to creating a guardianship, is clearly repugnant to the unqualified right conferred by the later enactment, and is, by a necessary implication, repealed.

Such seems to be the conclusion reached by the learned reviser of Willard's treatise on equity jurisprudence, 1875.

After referring to the various laws upon the subject, and above referred to, he says : "In 1871, by the act chapter 32, section 1, the Revised Statutes were so amended, as to give to every father the right to dispose of, by will, duly executed, the custody and tuition of his minor child, and adds, "That it would seem that the Revised Statutes of 1830, except so far as modified or changed by the act of 1871, are in force" (*Willard's Equity Jurisprudence, revised by Platt Potter* [1875] *pages* 620, 621).*

I do not find that the effect of the amendment of 1871 has been elsewhere considered.

I do not regard the cases of *Ely* agt. *Holten* (15 *N. Y.*, 595) and *Moore* agt. *Mausert* (49 *N. Y.*, 332), to which I am referred by the learned counsel for the plaintiff as in conflict with the above conclusion.

The amendment of 1871, is a formal enactment with an important addition, of a section of the Revised Statutes, which, if it had not been in effect repealed by the act of 1860, had been greatly changed and modified thereby, and which later law itself, in 1832, gave place to a new and independent provision, which qualified the original enactment, and it thus became necessary, to reach the end in view, to restore the original section, with the addition referred to.

If nothing more was intended than to confer the right upon the mother to appoint a guardian, in case the father had omitted to do so, that result would have been readily reached by adding simply a new section giving such right.

The form of the amendment adopted, under the condition of the law at the time, would seem to indicate that the legislature intended to cover the whole subject.

*Ely* agt. *Holten* (*supra*) decides that by incorporating a new provision, by way of amendment, in the body of an existing statute, the amendment declaring that the section be amended

* See note at end of case, page 511.

Thomson agt. Thomson *et al.*

" so as to read as follows," and the section is then copied with the changes to be made, no new right is conferred, so far as the new matter is concerned, anterior to the date of the amendment.

The case was disposed of on that ground.

And *Moore* agt. *Mausert* (*supra*) approving *Ely* agt. *Holten*, holds that the filing of a mechanic's lien in the office of the town clerk, under a statute, which had been amended, in pursuance of a statute declaring that such statute should be " amended so as to read as follows," retaining a part of the former statute but which abrogated the provision requiring that the notice should be filed in the town clerk's office, and had substituted in the place thereof the county clerk's office, was ineffectual to create a lien.   What is said in those cases respecting existing statutes, repeated by way of amendment, that they " have been the law all along," do not apply to a statute which had been previously amended.

The statute of 1862 was at best incomplete.

It did not, in terms, state when the written consent of the mother should be given, nor with what formality executed, to whom to be delivered, nor how or in what manner it was to be preserved, nor does it guard against the effect of a revocation of such consent after given.   It is readily seen that in its then form it was likely to introduce an element of uncertainty and perhaps of disagreement, and to some extent cripple the testamentary power of the father.

It may be that considerations of this character influenced the legislature in its restoration to the father of an unqualified right to make a testamentary disposition of the custody and tuition of the minor children.

I must hold, therefore, that the appointment of the persons named as testamentary guardians in the will under consideration is valid.

This conclusion dispenses with the necessity of examining the question as to whether the drawing of checks by the plaintiff, in the years 1872, 1874 and 1875, as executrix, pay-

able to the order of herself and James and David Thomson, " *testamentary guardians* of the children, and the indorsement of the same by herself and them as such testamentary guardians upon which funds were drawn, and the signing by her of receipts for moneys received from the persons named, being, as therein expressed, " the testamentary guardians named in the will of William Thomson," to be applied to the maintenance, support and education of the children, amount to a consent in writing to their appointment as such. It being held that such consent is not necessary to the validity of the appointment.

By the ninth clause of his will, the testator devised to the executors and executrix thereof, all his real estate, in trust, to sell the same, whenever they should deem a sale thereof expedient and proper, and to execute good and sufficient deeds to purchasers ; to collect and receive the rents, issues and profits thereof, to repair and improve the same, out of his personal estate, and the rents of his real estate, or the proceeds of his real estate sold, and, generally, to manage, control, and dispose of the same as they should see fit.

The Madison avenue house, and the dwelling at Lenox, and the furniture thereof were, however, reserved, and appropriated by the testator, as residences for his wife and children, so long as they should remain unmarried.

But the executors were authorized and empowered to lease, or in their discretion to purchase, in their name, other residences in the city of New York, or elsewhere, to be used and occupied until the death of his wife, to renew and replace the furniture, and pay all the taxes and assessments out of his general estate.

By the tenth clause of his will the testator directed that one-quarter of the proceeds of such sale of his real estate, should be paid over to his wife, Ellen L. Thomson, and the remaining three-quarters, to be equally divided among his children, share and share alike ; he, however, directed his executors to invest the three-quarters of the proceeds upon bond

and mortgage, each one-quarter separately, as they should deem advantageous, and pay over the income and profits thereof, to the guardians of his children, to be by them appropriated or invested, as far as necessary, for the maintenance, support and education of his children respectively. The personal estate of the testator, after the payment of debts and legacies thereout, was, by the will, divided into four parts, one-fourth part of which was to be paid to the testator's wife, within two years after his death, and the remaining three-fourths was to be separately invested, for the benefit of the children respectively, upon bond and mortgage, and the income to be paid to the guardians of the children as provided with respect to the income of the real estate.

It is urged by the learned counsel for the plaintiff, that the eighth and ninth sections of the will, do not, of themselves, or taken in connection with each other, or with other provisions of the will, create a trust in the executors, but at the most constitute a power only, and that accordingly the title to the real estate rests in the heirs, and they further claim, that there is no valid trust of the personal estate.

With respect to the real estate, as appears from the above provisions of the will, the same was in terms devised to the executors and executrix in trust. But a general devise to executors in trust, vests no estate in them except for such of the declared purposes as require that the title be vested in them (*Manice* agt. *Manice*, 43 *N. Y.*, 303).

Although the power of sale, with which the executors are invested, is a trust, yet the executors are not invested in virtue thereof alone with the legal title. This power could be well executed, under the will, without the legal estate being in them.

But the devise is upon the further trust to collect and receive the rents, issues and profits thereof, to repair and improve the same out of the rents or proceeds of real estate sold.

To lease, or in their discretion purchase, in their own name,

residences for the family in New York or elsewhere, and generally " to manage, control and dispose of same as they shall deem best," to accomplish the purposes of the will.

Convenience would seem to require that for the discharge of their duties and trusts, the executors and executrix should be clothed with the legal title and this has been expressly given.

The trust to sell is one of those authorized by the Revised Statutes, but if unaccompanied by the right to receive the rents and profits, it is valid as a power, but vests no estate in the trustees.

But the trustees must take an estate adequate to the due execution of the trust.

It is necessary that the executors should have the legal estate to enable them to collect the rents in their own name (*Wood* agt. *Wood*, 5 *Paige*, 597; *Bradley* agt. *Amidon*, 10 *id.*, 235; *Leggett* agt. *Perkins*, 2 *Coms.*, 297; *Tobias* agt. *Ketchum*, 32 *N. Y.*, 319).

But it is urged, as a further objection, that the duties of the executors under the will, are not active. That there is no positive direction to them to apply the rents, income and profits of the estate in any particular manner, nor to the use of any person, as is required with respect to express trusts authorized by statute.

By the seventh clause of the will, the testator declares that all the rest, residue and remainder of his estate, after payment of his debts and the legacies provided for, shall be equally divided among his wife and children, share and share alike, as is " thereafter in the will provided."

This direction manifestly applies to the way in which the same should be paid and applied. The testator contemplated an execution by his executors of the power of sale of his real estate, with which he had invested them.

Hence, in the tenth clause of his will, he directs his executors to invest the three-quarters of the proceeds of all sales, designed for his children, upon bond and mortgage, and the

payment of the income of each one-fourth to the guardians of his children, to be by them appropriated to their support, education and maintenance.

I must conclude that the testator intended that the children's portions of the rents and profits of the real estate, which the executors were authorized to collect by the ninth clause, before a sale thereof, should be paid by them to the guardians of the children, and that such intention is expressed by the words "as is hereinafter provided" at the close of the seventh clause. Such trust is within the statute (1 *R. S.*, 728, *sec.* 5, *subd.* 3; *Gott* agt. *Cook*, 7 *Paige*, 521; *DeRay* agt. *Irving*, 5 *Den.*, 646).

A payment to the guardians of the children, who have, under the will, the direction of their education, nurture and maintenance, is an application of the income to their use.

The duties of the trustees are active, they would be clearly so if the payment was directed to be made to guardians other than themselves. But the fact that the same persons are both trustees and guardians, cannot make what is active in the one case, absolutely inactive in the other. There is a distinct act enjoined, and which must be actually performed. This action involves the transferring and passing from themselves, standing in one relation, and subject to certain duties and liabilities, of funds to themselves occupying a new relation, and subject to new duties and responsibilities, with respect to the testator's children of whom they are the guardians. But the testator contemplated that his wife would be charged with the principal expenditure and care of the funds, to be paid out for the maintenance, support and education of his children during their respective minorities, and hence he provides, in the eighth clause of the will, that payment to her for this purpose, evidenced by proper vouchers, would be a full indemnity to her co-guardians. The terms "invest" and "invested" when used by the testator in regard to the disposition of the income by the guardians, have no significance which can be truly urged as illegal, and do not stand opposed

to the application of the whole thereof, to the chief purpose the testator had in mind, which was the support of his children during their respective minorities, out of their several shares of the income, and the safe custody of the principal, to be paid to them when they should severally attain the age of twenty-one years.

If more income was received from any share than was necessary for the support of the child for whom it was designed, the surplus would be held for the benefit of such child, and would be paid over at the time designated for receiving the principal.

The trust with regard to the personal estate and the income thereof, is of the same character as those relating to the real estate.

I see no valid objection, in these regards, to the dispositions made by the testator in respect either to the real or personal estate, or to the trusts created in the executors with respect to the same.

The trusts over the children's shares continue by virtue of the eleventh clause of the will, until they respectively attain the age of twenty-one years, when the share to which each child is entitled, with all accumulations, shall be paid over to each child.

The widow's share of the rents and profits of the real estate should be paid to her directly by the executors and trustees until a sale thereof, when she is entitled absolutely to one-fourth of the proceeds of the sale, and she is entitled to receive one-fourth part of the personal estate, within two years from her husband's death.

The gift, in the fifteenth clause of the will, to the brothers and sisters of the testator of the shares of his children out of his estate, in the event that they should all die without issue, before arriving at the age of twenty-one, contravenes the statutes of perpetuities.

The thirteenth clause of the will provides, that in case of the death of either child before arriving at the age of twenty-

one years, without issue, the share to which the child, so dying, shall be entitled under the will, shall go to the survivors or survivor of the children, and the issue of such child as shall be dead.

The consummation of the testator's gifts to his brothers and sisters, depends upon the termination of more than two lives in being at the death of the testator, and is illegal.

The provisions in favor of the brothers and sisters of the testator can, however, be dropped without disturbing the other dispositions of the will which are held to be valid.

The provisions of the eleventh and thirteenth sections of the will remain intact, and the property must remain subject to the trusts as to the shares of each child until his majority (*Oxley* agt. *Lane*, 35 *N. Y.*, 340; *Savage* agt. *Burnham*, 17 *id.*, 561; *Kane* agt. *Gott, supra*).

The conclusion reached is, that all the provisions of the will are valid except the portion of the fifteenth clause above referred to, which is void.

Findings and conclusions will be prepared by the plaintiff's attorney on the basis of this decision, and will be settled upon notice to the defendants.

After the findings had been settled, in pursuance of the foregoing opinion, a motion for a resettlement was made; the question raised was in respect to the extent and quality of the trust created by the will.

Upon this motion the following opinion was delivered :

*Special Term, September,* 1877

VAN VORST *J.* — The ninth clause of the testator's will, is the only part thereof, in which the real estate, of which he died seized, is disposed of by distinct words of gift and devise.

In that clause the real estate, is explicitly, by apt words, given and devised to the executors, and executrix.

The duties imposed upon them by the will, with respect to the rents and profits thereof, the management, sale, and disposal of the realty itself, as was stated in the opinion heretofore delivered in this action, invested the executors and executrix with the legal title.

The intention of the testator to clothe them with the title, is shewn by the express words of gift to them, and by the duties and responsibilities imposed by him. He meant that the property should be sold through and by them only.

Although there is no positive limitation imposed by explicit words, as to the time within which the trust to sell should be exercised, it was the manifest intention of the testator that the property should be sold within the lifetime of the widow, and that as to her interest in the estate, the trust should terminate at her death.

In and by the tenth clause of the will one-quarter of the proceeds of any sale, was to be paid over to his wife.

There is evidence of the testator's intention contained in the will, that the real estate should be actually sold and converted into money, by his executors and executrix, except the Madison avenue and Lenox property, and that the gift to her was not of the substance of the realty, but one-quarter of the proceeds realized upon its sale.

The seventh clause in this regard is in subordination to the subsequent ones, but is not in conflict with them.

It will be observed that in the seventh clause there are no words of gift except as involved in the expression "*equally divided among.*" These words, while in themselves sufficient to dispose of the interest intended, are modified in substance, as is the whole clause, by the closing words, "*as is hereinafter provided.*"

These words clearly refer to the clauses of the will directing the sale of the realty and the payment to the wife of her portion of the proceeds, and of the investment of the children's shares.

The rents and profits are expressly given to the executors

and executrix, and the widow, until sale, must receive her portion thereof, under the seventh clause, from them.

The trust in the executors and executrix of the real property, is not as to the interest of the widow, and the rents, issues and profits thereof, in contravention of the Revised Statutes (*Revised Statutes, vol.* 2, *p.* 728, *sec.* 55, *sub.* 3).

The will, by its terms, does not continue the trust beyond the life of the widow. And in saying that the trust does not continue beyond her life, nothing is conveyed in opposition to the terms of the will.

Nor is the will opposed to the case of *Downing* agt. *Marshall* (23 *N. Y.*, 366).

In that case the continuance of the trust was not dependent upon the *life of the beneficiary*, but of *another* not interested in its performance.

I think the findings heretofore made, together with the conclusions, must stand as signed. The plaintiff's counsel, who prepared them, asks for a resettlement on the supposed ground that he was in error in so framing them, that the opinion heretofore delivered does not support them.

If there is any obscurity in the opinion on that subject, it is removed by what is above stated.

The motion is denied, without costs.

NOTE. — The Hon. Platt Potter, in reviewing the proposition on the subject of the guardianship of minor children, contained in his edition of Willard's Equity Jurisprudence (*pages* 620, 621), writes what, with his permission, is added as a note, as follows:

"By the Revised Statutes of 1830 (*vol* 2, *p.* 150, *sec.* 1) it was provided that every father, &c., may, by his deed or last will, &c., dispose of the custody, &c., of his child, &c. This was the only statute regulation then in force, and this so remained until 1860 (*Sess. Laws, chap.* 90, *p.* 159, *sec.* 9).

"This last statute took away the power of appointment, and itself, in terms, made the appointment of wife and husband as joint guardians. Before, the power of appointment was in the father. Then came the act of 1862 (*chap.* 172), which first, in absolute terms, repealed the provision (*sec.* 9 *in the act of* 1860). It did not amend that act, but enacted a new provision: Repealing the act of 1860, revived the Revised Statutes,

and section 6 of the act of 1862 was, therefore, an amendment of the Revised Statutes, in that there was a prohibition to the man, which, doubtless (as it is afterwards in the same section connected with the mother), is to be construed to mean the father, or such other man as may be authorized to bind, as in case of apprentices. Then came the act of .1871, which purports to be an amendment of the Revised Statutes (and which it assumes to be in force). This amendment consists in giving to the mother (when the father had died without executing his power of appointment) the same power, as the father might have exercised, while living. This was not in the Revised Statutes.

"Then the question arises whether section 6 of the act of 1862 is repealed; what I wrote in the book will have that inference, and I am willing now, upon review, to repeat, that so far as the guardianship of minor children is concerned, it is a repeal by necessary implication.

"The act of 1862 prohibits the disposition, except upon the condition of the mother's written consent. The act of 1871 authorizes it to be done without condition attached.

"The Revised Statute in 1871 is made to read as follows, &c., &c.

"That is, it is made to read as to the particular matter under consideration as to destroy the condition of the act of 1862.

"This repugnance is confined, however, to guardianship. It must be remembered that section 6 of the act of 1862 extends to apprentices and the power to bind them, as well as the appointment of guardians. By like rule of construction, so much of section 6 as relates to the binding of apprentices, is not repealed by the act of 1871, nor by any other act so far as I have examined. That is, there is not a total repeal of that section." [REP.