## In the Matter of the Estate of BENJAMIN HERTS, Deceased.

Surrogate's Court, New York County, December 3, 1937.

*Roberts Moers* [*Benjamin F. Schreiber* and *Harold M. Hoffman* of counsel], for the petitioner, as temporary administratrix.

*Hartman, Levy & Hartman* [*Seymour W. Levy* of counsel], for the Hebrew Free Burial Association of New York.

*Goldfarb & Fleece*, for the Hebrew Convalescent Home.

*Stroock & Stroock* [*Robert D. Steefel, Milton Socolof, Samuel Hoffman* and *Harold Schwarzberg* of counsel], for the Jewish Theological Seminary of America.

*Feiner, Skutch & Burton* [*Robert D. Steefel, Milton Socolof, Samuel Hoffman* and *Harold Schwarzberg* of counsel], for the National Hospital for Speech Disorders, Inc.

*Gould & Wilkie*, for the National Society for the Prevention of Blindness, Inc.

*Koenig, Bachner & Koenig*, for the Beth Abraham Home for Incurables.

*I. Montefiore Levy*, for the New York Guild for the Jewish Blind.

*Isidor M. Katz*, for the Hebrew Home for Chronic Invalids.

*Frederick W. McGowan*, for the National Surety Corporation.

DELEHANTY, S. One point of controversy in this proceeding relates to the construction of the provisions of article third of the will of deceased. Another involves consideration of the powers and authority given to the trustee under the will as they may affect the right of the widow of deceased to elect to take against the will under section 18 of the Decedent Estate Law. A further question of construction was raised respecting certain provisions of article first of the will but petitioner has withdrawn this question from consideration.

The first paragraph of article third places the residuary estate in trust with directions for payment of the income to deceased's widow during her lifetime. Article third continues:

" Upon the death of my wife or upon my death, if she shall not survive me, the principal of my residuary estate shall be disposed of as follows:

" (a) The sum of Two Thousand Five Hundred Dollars ($2,500) shall be paid over out of the principal of my residuary estate to Montefiore Hospital for Chronic Diseases, irrespective of the contingency set forth in subdivision (c) of this article of my Will. Said sum of money shall be used to establish a free bed for needy persons to be known as the ' John, Fanny and Imogene Herts Memorial.'

" (b) The balance of the principal of my residuary estate subject, however, to the contingency set forth in subdivision (c) of this article of my Will, shall be paid over to The Hebrew Convalescent Home, The National Hospital for Speech Disorders, Inc., Society for the Relief of the Destitute Blind of the City of New York, Hebrew Free Burial Association of New York, Beth Abraham Home for Incurables, National Society for the Prevention of Blindness, Inc., Jewish Theological Seminary of America, Henry Street Settlement, Hebrew Home for the Aged of Harlem, Hebrew Home for Chronic Invalids and New York Guild for the Jewish Blind.

" (c) For a long time prior to the execution of this my Will, the existence and whereabouts of my brother, George Herts, have been unknown to me or to my sister, or, if he predeceased my sister, leaving descendants him and her surviving, the existence and whereabouts of such descendants have been likewise unknown to us, although in my lifetime I have caused diligent search to be made for the purpose of ascertaining the existence and whereabouts of my said brother, if living, or of his descendants if he should have died, but without result. Accordingly, if within the period of one year from the date of the death of the survivor of my wife and myself, the existence and whereabouts of my said brother, or if he be deceased, of any of his descendants, shall be ascertained by my trustee, or if he or any of his descendants shall appear during said period of one year immedi-

ately following the date of the death of the survivor of my wife and myself and make claim upon my Trustee, one-fourth of said balance of the principal of my residuary estate shall be paid over to my said brother, George Herts, or if he shall have predeceased the survivor of my wife and myself, to his descendants living upon the death of the survivor of my wife and myself, *per stirpes,* and I direct that the devise and bequest to the charities named in subdivision (b) of this article of my Will shall be cut down to three-fourths of the balance of the principal of my said residuary estate. I direct, however, that my Trustee shall make no investigation or search for my said brother or any descendant of him for any period in excess of the time of one year from the date of the death of the survivor of my wife and myself, and shall not expend more than the sum of Five Hundred Dollars ($500) from said balance of the principal of my said residuary estate in the prosecution of any such search or investigation and in the event that neither my said brother George Herts nor any descendant of him shall survive the survivor of my wife and myself, or in the event neither my said brother nor any descendant of him shall appear and claim said one-fourth share of said balance of the principal of my residuary estate, or my Trustee within the period of not more than one year from the date of the death of the survivor of my wife and myself shall find no trace of my said brother or of any descendant of him as a result of any investigation or search which it in its discretion shall institute then my said Trustee shall distribute the entire balance of the principal of my residuary estate as directed in subdivision (b) of this article of my Will."

The widow of deceased takes the position that the attempted disposition of one-fourth of the fund remaining after the payment of the legacy of $2,500 to Montefiore Hospital for Chronic Diseases is void. She claims that the provisions for payment of this quarter of the fund to deceased's brother or his descendants on the contingencies of his or their appearance within one year after her death renders the provisions for disposition of this part of the fund invalid because the title to it may not vest in ownership within two lives in being at the death of deceased. She also asserts that the provisions for disposition of the other three-fourths of the fund are bound up so inextricably with the gift of the one-fourth part that the gift of the entire balance of the residuary fails.

It should be first considered whether the gift to the charities of three-fourths of the fund is nullified by any invalidity which may affect the provisions of the gift of the one-fourth part. It is argued that deceased intended to withhold vesting of the entire fund until the expiration of one year after the widow's death. It is said that such intention is indicated (1) by the fact that there are no words of

present gift and that the charities take only through a direction to divide and pay over, (2) by the provision that the gift to the charities shall be " cut down " if the brother or his descendants appear within the year, (3) by the provision that if they should not appear *then* the trustee shall distribute " the entire balance " of the principal to the charities, (4) by the fact that until the occurrence or non-occurrence of the contingencies specified the exact amount which each charity will take is uncertain, particularly as the fund may be reduced if a further search is conducted by the trustee, and (5) by the failure of deceased to direct payment to the charities of the income on any part of the fund. It is stated further that the direction for payment of the sum of $2,500 to the Montefiore Hospital for Chronic Diseases immediately on the death of the life beneficiary also indicates an intention to defer vesting of the balance of the residuary until the expiration of the one-year period.

Considerable reliance is placed on *Wright* v. *Wright* (225 N. Y. 329) to support the claim that there is here a direction to divide and pay which renders the gifts to the charities contingent. In that case the gift was made upon condition that the corporate legatee should at all times be maintained as a free circulating library. There the legatee had ceased to exist as a library prior to the death of the life beneficiary. While the text of the decision refers to the divide and pay over rule, in actual fact the legatee had failed to comply with the condition of the gift because its existence had ceased. This failure to comply with the condition was sufficient to support the conclusion reached. This view of the *ratio decidendi* of that case was taken in *United States Trust Co.* v. *Taylor* (193 App. Div. 153, 159; affd., 232 N. Y. 609).

A remainder gift to named persons imports an immediate vesting (*Matter of Gardner*, 140 N. Y. 122; *Matter of Soy*, 143 Misc. 217, and cases cited.) Under the cited authorities the divide and pay over rule cannot be applied here to defeat the vesting of three-fourths of the fund in the charities as of the date of death of deceased. Nor do the other provisions of the will indicate an intention to defer vesting of this three-fourths of the fund to a date after the death of the life beneficiary. The direction that upon the happening of either of the two contingencies the gift to the charities is to be " cut down " to three-fourths of the balance of the principal imports a vested prior gift of the entire balance subject only to the contingency that the gift may be defeated as to one-fourth. The direction for distribution of the entire balance if the brother or his descendants do not appear in no way affects the vesting of three-fourths of the fund in the charities. Division at the end of the one-year period may well have been intended by deceased as a convenience in allo-

cating the shares of the principal if the brother and his descendants appeared. Postponement of payment of a vested gift is clearly valid. (*Matter of Hitchcock*, 222 N. Y. 57; *Fulton Trust Co.* v. *Phillips*, 218 id. 573.) The lack of direction for payment of income on any part of the fund is an indication of intention to vest rather than the reverse since the vesting of the fund would entitle the charities to income on it after the death of the widow and no direction for payment of income would be necessary. There can be no reasonable doubt that this testator intended in all events that the charities should have three-fourths of the residuary after payment of the legacy to Montefiore Hospital. Every rule of construction compels the finding that three-fourths of the fund vested in the charities at the death of deceased.

The question remains whether and to what extent the provisions of the will respecting one-fourth of the fund violate the rule against suspension of absolute ownership and what effect invalidity, if present, has on the disposition of this part of the fund. By subdivision (b) of article third the entire fund is payable to the charities subject only to the contingency that the gift might be defeated as to one-fourth by the happening of either of the contingencies mentioned. There is no condition of survivorship or continuance of existence attached to the gift so far as the charities are concerned. The only event which can defeat the gift of this one-fourth to them under the terms of the will is the appearance of deceased's brother or the brother's descendants. The charities have, therefore, in this one-fourth of the fund a vested remainder which is subject to being divested (*Roosa* v. *Harrington*, 171 N. Y. 341; *Hennessy* v. *Patterson*, 85 id. 91; *Matter of Banker*, 223 App. Div. 496; affd., 248 N. Y. 596; *Matter of Johnson*, 233 App. Div. 587; *Matter of Hoole*, 156 Misc. 821) unless the nature of the contingencies destroys whatever estate was given them in the first instance.

The question here is whether the contingencies are so limited as to the time of occurrence that they must take effect, if at all, within two lives in being at the death of deceased. If the only contingency involved were the discovery of the whereabouts of the brother or a claim by him only during the prescribed period of one year, then the limitation would be valid. (*Hatfield* v. *Sneden*, 54 N. Y. 280; Underhill on the Law of Wills, § 509.) This is so because the contingency would have to occur within the lives of the widow and of the brother. Here, however, there are two contingencies. The will speaks of " the existence and whereabouts of my said brother, if living, or of his descendants if he should have died," and, again, " if he or any of his descendants shall appear during the said period of one year immediately following the date of the death of the sur-

vivor of my wife and myself and make claim upon my trustee, one-fourth of said balance of the principal of my residuary estate shall be paid over to my said brother * * * or if he shall have predeceased the survivor of my wife and myself, to his descendants." Deceased intended to create two limitations. The limitation in favor of descendants of the brother was intended to take effect if the limitation in favor of the brother failed of effect because of the brother's death. There is no possibility of knowing how many descendants the brother of deceased may have left who survived deceased, and so it is quite apparent that as to such descendants the contingency might not occur within two lives in being.

Since the rule of law is that the limitation or contingency must be such that the absolute ownership of the property will not be suspended beyond the statutory period (*Matter of Trevor*, 239 N. Y. 6; *Matter of Wilcox*, 194 id. 288; *Walker* v. *Marcellus & O. L. R. Co.*, 226 id. 347; *Manice* v. *Manice*, 43 id. 303; *Leonard* v. *Burr*, 18 id. 96; *Thomson* v. *Thomson*, 55 How. Pr. 494; *Clark* v. *Clark*, 23 Misc. 272), the limitation over in favor of the descendants of the brother is void. There arises from that fact the further question whether the invalidity in this limitation affects the limitation over to deceased's brother. The court holds that the plan of the deceased had as a major objective the benefiting of the charities, as the next important objective the benefiting of deceased's brother, and as a minor and subordinate objective the benefiting of the descendants of the brother. The excision of this latter and subordinate purpose does not invalidate the major items in deceased's plan. The gift to the charities is in any event valid and the gift over to the brother is valid if the conditions are met. (*Matter of Trevor, supra,* at p. 17; *Matter of Cogrove,* 221 N. Y. 455; *Schettler* v. *Smith,* 41 id. 328; *Manice* v. *Manice, supra.*) The ruling here made validates any authorized expenditures which may be made by the trustees in the search for the brother.

The court notes in the main brief of petitioner a reference to a possible violation of the limitations imposed by section 17 of the Decedent Estate Law upon gifts to charities. The question has not been pursued before the court. No consideration has been given to the question and none will be given unless the parties inform the court that a ruling is desired thereon. In the latter case the record must be completed with the furnishing of all necessary data.

The widow of deceased asserts that certain of the powers given the executor and trustee in respect of the trust estate impair the value of the trust for her benefit to such an extent that she has the right under section 18 of the Decedent Estate Law to elect to take

against the will. The powers given the trustee of which complaint is made are summarized in her brief as follows:

(1) To retain any property forming a.part of the testator's estate at his death, whether or not the same shall constitute legal investments.

(2) To sell any or all of the testator's real and personal property for such amounts, upon such terms and in such manner as to them may seem advisable.

(3) To change investments and to make reinvestments as and when they see fit and in making investments and reinvestments, to nvest in any stocks, bonds, notes or other securities or other property which they may choose in their discretion, whether or not the same shall constitute so-called legal investments.

(4) To consent to any reorganization, consolidation, merger or readjustment of the finances of any corporation, company or association of which the trustee holds stock.

(5) To act without bond.

(6) A declaration that any dividends declared or authorized in respect of any stock held by the trustee, payable in the stock of any class of the corporation declaring or authorizing the same, shall be entirely principal, and no part of any such dividends shall be income.

Except for the listed item 6 the powers of the trustee come within the provisions of paragraph (h) of subdivision 1 of section 18 of the Decedent Estate Law (added by Laws of 1936, chap. 234), in effect April 3, 1936. The will was executed on September 7, 1934. Deceased died on November 25, 1936. The amendment was in effect when deceased died, and it is controlling. (*Matter of Gaffken,* 197 App. Div. 257; affd., 233 N. Y. 688; *Matter of Carnevale,* 248 App. Div. 62; *People* v. *Powers,* 147 N. Y. 104.) While the amendment is held to control the question raised in respect of the first five listed items, it should be noticed that the argument of deceased's widow is based upon an erroneous assumption respecting the meaning of the Court of Appeals in affirming the result reached by the Appellate Division in *Matter of Curley* (245 App. Div. 255). The Court of Appeals has often warned the bench and bar that an affirmance without an opinion imports no agreement with the terms of the opinion below but only agreement with the result reached. Despite that general warning there are to be found some cases in the lower courts which lend support to the argument made on the basis of *Matter of Curley*. In *Matter of Clark* (275 N. Y. 1) the Court of Appeals has set the lower courts right respecting *Matter of Curley* and has made it plain that there the affirmance of the Appellate Division constituted only a holding that an illusory

gift was not sufficient to bar an election. In *Matter of Clark* (*supra*) the powers granted to the fiduciary were similar (except for listed items 4 and 6) with those granted here to the trustee. Item 4 is within the purview of the amendment made by chapter 234 of the Laws of 1936 and is not a basis to a right to elect against the will. It is clearly within the grant of power to invest in non-legals and that power is validated by the recent amendment.

Separate consideration is necessary respecting the power listed as item 6 hereinabove. The will says: " Any dividends declared or authorized in respect of any stock composing in whole or in part at any time the principal of the trust created hereby, payable in the stock of any class of the corporation or association declaring or authorizing the same, shall be entirely principal, and no part of any such dividend shall be income." It is asserted that this provision deprives the widow of a substantial right in that some stock dividend may represent current earnings constituting income, although payable in stock. Section 17-a of the Personal Property Law directs that, unless otherwise provided in a will, any dividend which shall be payable in the stock of a corporation composing wholly or partly the principal of a trust shall be principal and not income of such trust. The statute says that the addition of any such dividend to principal shall not be deemed an accumulation of income. In *People ex rel. Clark* v. *Gilchrist* (243 N. Y. 173, 182) the Court of Appeals said that section 17-a was enacted to avoid complications arising from the necessity for allocating stock dividends between principal and income. The language of the will is similar in many respects to the language of the section. The draftsman of the will plainly had the text of the section before him and was attempting to state a rule of administration in conformity with the section. As reported in the account, the stocks owned by deceased at the time of his death constituted approximately one-third of the value of his estate. His share holdings were in thirteen separate companies. In each of eight of these companies he had only ten shares. In the other five he had forty-eight, twenty-eight, twenty-two, twenty and fourteen shares, respectively. The shares which he held are in companies whose shares are regularly listed on the important exchanges. They are shares in most instances in industrial organizations whose capital structure and dividend policy would undoubtedly be regulated without any thought of the trivial stock holdings of this deceased. There is no basis upon which the widow of deceased can apprehend any unfairness to her in connection with the issuance of stock dividends by these companies. There is no reason for apprehension that any powers of investment given to the trustee will in turn bring into

the estate the shares of other corporations whose dividend policy might operate to the disadvantage of the widow. The court does not deem it necessary to consider the limitations, if any, on section 17-a of the Personal Property Law. (Compare *Matter of Villard,* 147 Misc. 472.) The court holds that the direction contained in item 6 of the powers quoted above from the brief of the widow of deceased is not such a grant of power as authorizes an election against the will.

Submit, on notice, decree construing the will and settling the account accordingly.