LEWIS L. FOSDICK et al., as Executors, etc., et al., Appellants,
    *v.* THE TOWN OF HEMPSTEAD, Individually and as Trustee,
    Respondent, et al., Appellants.

To constitute a valid testamentary trust, there must be a defined beneficiary
    either named or capable of being ascertained within the rules of law
    applicable in such cases.

A bequest to a town, in trust, in perpetuity for the benefit of the poor of
    the town, not confined to those for whose support the town is under a
    statutory liability, is invalid for want of an ascertained beneficiary.

In the absence of a special grant of power by statute, a town cannot act
    as trustee of property given for charitable purposes.

A testamentary gift to a town, in order to take effect as an absolute one,
    must be for some one or all of the purposes for which the corporation
    was created.

H., by his will, gave his residuary estate to trustees for the establishment
    and permanent endowment of an academy to be located in the town of
    Hempstead.   The trustees were directed to procure the incorporation of
    the academy and to transfer the funds to the corporation.   In case any
    of the trusts created by the will failed, the testator gave all his "estate
    and property affected by such failing trust or trusts," one-half to a
    church named, and the other half to said town "to be kept as a fund

for the support of the poor of said town, to be known as the Hewlett fund." The will contained directions to the trustees named therein to sell the real estate. In an action for the construction of the will, *held*, that the trust for the academy was void, as was also the gift to the town, and this, without regard to the question as to whether there was an equitable conversion of the real estate into personalty; that considered as a bequest, its language indicated that the testator, in specifying the object of his bounty, referred not simply to those persons who would answer the statutory definition of "poor," *i. e.*, those who were town charges, but to all persons who would be regarded as subjects of individual charity on account of their poverty; also, that while the word "trust" was not used, the language of the gift indicated it was not for the sole benefit of the town, but imported necessarily that the amount was to be perpetually kept as a fund in trust, the income to be expended for purposes, the performance of which was not otherwise obligatory on the town; and that, conceding the town had the legal right to take gifts by bequest absolutely, or to take in trust, the income only to be applied to some named corporate or administrative purpose, as to which, *quære*, the trust sought to be created was void.

The act of 1870 (Chap. 591, Laws of 1870), providing for the custody of moneys arising from the sale by the town of Hempstead of its common lands, makes no distinction in its favor over other towns, as to the right to take gifts in trust.

*Shotwell* v. *Mott* (2 Sand. Ch. 46), stated to have been overruled.

*Power* v. *Cassidy* (79 N. Y. 602); *Williams* v. *Williams* (8 id. 525); *Wetmore* v. *Parker* (52 id. 459); *LeCouteulx* v. *City of Buffalo* (33 id. 333); *Vail* v. *L. I. R. R. Co.* (106 id. 283), distinguished.

(Argued January 28, 1891; decided February 24, 1891.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 10, 1890, which modified and affirmed as modified a judgment construing the will of Abraham Hewlett, deceased, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. T. Marean* for appellants. The town of Hempstead had no capacity to receive the legacy. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Maxmilian* v. *Mayor, etc.*, 62 id. 160, 165; *City of Rochester* v. *Town of Rush*, 80 id. 302;

*People* v. *Town Auditors*, 74 id. 315, 316; *Town of Guil-
ford* v. *Bd. of Suprs.*, 13 id. 143, 146, 147; *People* v. *Brown*,
55 id. 187; Dillon on Mun. Corp. §§ 22–25, 28–30; *People*
v. *Detroit*, 28 Mich. 228; *Corporation of Gloucester* v. *Wood*,
3 Hare, 131, 140; 1 H. L. Cas. 272, 285.) Any gift accom-
panied by an imperative direction to apply it to specified pur-
poses is a trust, and the donee takes it with an obligation to
devote it to those purposes except where such application is
for the benefit of the donee only (1 Jarman on Wills [5th
Am. ed.], 694), or, if the donee be a corporation, what is the
same thing, where the application directed is essentially the
same as would be enjoined by the fundamental law of the cor-
poration without such direction. (1 Jarman on Wills [5th
Am. ed.], 694; *Williams* v. *Williams*, 8 N. Y. 525; *B. P.
Comrs.* v. *Armstrong*, 45 id. 234.) The trust is a charitable
trust for the use of the poor of the town without distinction,
to apply the income to their support, the corporation legatee
by its corporate agents to make the application according to its
judgment and discretion; and not a trust for a public use, to
wit: to pour such income into the governmental channels which
flow to the support of a limited class of poor in lieu of taxation.
(*Atty.-Gen.* v. *Clarke*, Ambler, 422; *Atty.-Gen.* v. *Wilkinson*,
1 Beav. 373; *Atty.-Gen.* v. *Bovill*, 1 Phil. 763, 768; *Atty.-Gen.*
v. *Exeter*, 2 Russ. 53; *Atty.-Gen.* v. *Price*, 3 Atk. 108, 110;
*Atty.-Gen.* v. *Brandreth*, 1 Y. & C. 200; *Hereford* v. *Adams*,
7 Ves. 324, 330; *McIntire* v. *Zanesville*, 17 Ohio St. 352; *Atty.-
Gen.* v. *Blizzard*, 21 Beav. 233; *Doe* v. *Howell*, 2 B. & Ad. 744.)
The gift can be sustained only upon the theory that the corpo-
ration legatee has so clearly been authorized to take and exe-
cute such a trust, as to amount to an abrogation in its favor
and in favor of gifts to it of such general lands. (*Adams* v.
*Perry*, 43 N. Y. 500; *Cottman* v. *Grace*, 112 id. 306, 307;
*Riker* v. *Leo*, 115 id. 93.) Towns have corporate capacity
only to purchase and hold in trust such material property, real
and personal, as is necessary or convenient for actual occu-
pation and manual use within the town for some specific
governmental or clearly public purpose in which all the

inhabitants are interested; and nothing more is meant by "necessary to the exercise of its administrative powers." It is the authorized trust depositary of the title of such property and nothing more. (*Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283; *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292; *Davies* v. *Mayor*, etc., 83 N. Y. 207; Dillon on Mun. Corp. §§ 54, 56; *Jackson* v. *Hartwell*, 8 Johns. 422; 1 R. L. 219, 221, 222; 1 R. S. chap. 15, §§ 1, 42; Laws of 1846, chap. 186; Laws of 1856, chap. 179, § 27; Laws of 1840, chap. 318; Laws of 1841, chap. 261; Laws of 1864, chap. 555, § 15.) Even if it were fairly inferable that the testator intended to authorize the town to expend the fund immediately in gross for the benefit of the poor, in that case, though the statute against perpetuities might not be urged against the validity of the gift, it is still void for indefiniteness of the beneficiaries. (*Holland* v. *Alcock*, 108 N. Y. 312.) The town of Hempstead had no power to take either real or personal property by will, whether to its own use or to charitable uses. (2 Black. Comm. 241; 4 Kent's Comm. 373; *Durando* v. *Durando*, 23 N. Y. 334; *Kohl* v. *U. S.*, 91 U. S. 374; *Sherwood* v. *A. B. Society*, 4 Abb. Ct. App. Dec. 227; *In re McGraw*, 111 N. Y. 84; *McCartée* v. *O. A. Society*, 9 Cow. 437; *In re Underhill*, 6 Dem. 466.) There is no equitable conversion of the real estate. (*Chamberlain* v. *Taylor*, 105 N. Y. 185; 2 R. L. 537, chap. 84; 1 R. L. 263, chap. 84.)

*Edward E. Sprague* for respondent. Every intendment of law and public policy is in favor of the legacy to the town of Hempstead. (*Riker* v. *Leo*, 115 N. Y. 103; *Cruikshank* v. *Home of Friendless*, 113 id. 349.) The town of Hempstead has capacity to take by bequest. (*People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 565; *Williams* v. *Williams*, 8 id. 525; *In re McGraw*, 111 N. Y. 84; *Betts* v. *Betts*, 4 Abb. [N. C.] 317, 396; Angell & Ames on Corp. § 177; *In re Fox*, 52 N. Y. 530; *Levy* v. *Levy*, 33 id. 122: *Burrill* v. *Boardman*, 43 id. 263; *Davies* v. *Mayor*, etc., 83 id. 287; *K. C. F. Ins. Co.*

v. *Stephens,* 101 id. 411 ; *Wills* v. *Town of Salina,* 119 id.
280.) The capacity to take this legacy is expressly conferred
upon the town by the Revised Statutes. (Const. of 1777, art.
36 ; Const. of 1821, art. 7, § 14; Const. of 1846, art. 1, § 18 ;
*Davies* v. *Mayor, etc.,* 83 N. Y. 207 ; *City of Buffalo* v.
*Bettinger,* 76 id. 393.) The support of the poor is one of the
municipal functions of the town of Hempstead. (State Const.
art. 8, § 11 ; 3 R. S. 2111, 2120 ; 80 N. Y. 311.) The town
has capacity to receive a gift which will assist it in discharging
its municipal functions. (*People* v. *N. R. S. R. Co.,* 121 N.
Y. 582 ; *In re Fox,* 52 id. 530 ; *Le Couteulx* v. *City of Buffalo,*
33 id. 333 ; *Ketchum* v. *City of Buffalo,* 14 id. 360 ; *Vail* v.
*L. I. R. R. Co.,* 106 id. 283 ; *Webb* v. *Neal,* 87 Mass. 575 ; *Beach*
v. *Haynes,* 12 Vt. 15 ; *State* v. *Woodward,* 23 id. 92 ; *Castle-
ton* v. *Langdon,* 19 id. 210 ; *Sargent* v. *Cornish,* 54 N. H. 18 ;
*Worcester* v. *Eaton,* 13 Mass. 371 ; 2 Dillon on Mun. Corp.
[4th ed.] § 566.) The legacy to the town does not create a
trust ; it is an absolute gift for a specific purpose. (*Riker* v.
*Leo,* 115 N. Y. 103 ; *Sutton* v. *Cole,* 20 Mass. 232 ; *In
re Fox,* 52 N. Y. 538 ; *Vail* v. *L. I. R. R. Co.,* 106 id.
283 ; *Williams* v. *Williams,* 8 id. 536 ; *Wetmore* v. *Parker,*
52 id. 459 ; *Levy* v. *Levy,* 33 id. 117.) If this is a bequest
for charity in the ordinary sense, the town still has capacity to
take and dispense the fund. (*Holland* v. *Alcock,* 108 N. Y.
312 ; *Perin* v. *Carey,* 24 How. [U. S.] 465 ; *Vidal* v. *Girard,*
2 id. 127 ; *Mayor, etc.,* v. *Elliott,* 3 Rawle, 170 ; *Bell County*
v. *Alexander,* 22 Tex. 350 ; *Chambers* v. *St. Louis,* 29 Mo.
543 ; *Webb* v. *Neal,* 87 Mass. 575 ; 2 Dillon on Mun. Corp.
[4th ed.] §§ 567–572 ; 1 Perry on Trusts [4th ed.] § 43.) The
legacy is valid, even though it be construed to create a
trust. (*Gilman* v. *McArdle,* 99 N. Y. 456 ; *Holmes* v.
*Mead,* 52 id. 344 ; *Robert* v. *Corning,* 89 id. 225 ; *Webb*
v. *Neal,* 87 Mass. 575 ; *Downing* v. *Marshall,* 23 N. Y.
382 ; *Beekman* v. *Bonsor,* Id. 318 ; *Prichard* v. *Thomp-
son,* 95 id. 76 ; *Holland* v. *Alcock,* 108 id. 312 ; *In re Ben-
nett,* 113 id. 522.) The provisions of the will work an equit-
able converson of the real estate into personalty. (*Power* v.

*Cassidy*, 79 N. Y. 602; *Phelps* v. *Pond*, 23 id. 69; *Delafield* v. *Bartow*, 107 id. 535; *Asche* v. *Asche* 113 id. 232; *Burrill* v. *Boardman*, 43 id. 260; *Vankleek* v. *Dutch Church*, 20 Wend. 457; *Parker* v. *Linden*, 113 N. Y. 28; *Chamberlain* v. *Taylor*, 105 id. 185.) The town could not lawfully apply this legacy to any other uses than the support of the poor. (*Benson* v. *Whittam*, 5 Sim. 22; *Byne* v. *Blackburn*, 26 Beav. 41; *Biddles* v. *Biddles*, 16 Sim. 1; *Berkeley* v. *Swinburne*, 6 id. 613; *Jones* v. *Greatwood*, 16 Beav. 527; *Hart* v. *Tribe*, 18 id. 215; *Thorp* v. *Owen*, 2 Hare, 607; *Clarke* v. *Leupp*, 88 N. Y. 228.) The limitation of the use of the fund if valid, does not create a trust. (*B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *People* v. *Albany*, 4 Hun, 675; *K. C. F. Ins. Co.* v. *Stevens*, 101 N. Y. 411; *Gilman* v. *McArdle*, 99 id. 451; *Smith* v. *Edwards*, 88 id. 102.)

Peckham, J. Abraham Hewlett of the town of Hempstead in Queens county duly executed his will, and having died, it was admitted to probate. Questions arising upon the proper construction of some portions of it, this action was brought to obtain a judicial construction thereof.

By the tenth section of the will the testator gave and devised the residue of his estate to trustees for the establishment of a school and its permanent endowment, for the education and benefit of such persons as should be admitted thereto by the trustees or their successors; the school was to be located in the town of Hempstead and was to be known as the Hewlett Academy. The trustees were to apply to the legislature for proper acts to incorporate the academy, and the funds were to be transferred by the trustees to such corporation.

In case any of the trusts created by his will should fail for any reason, then the testator gave, devised and bequeathed all his "estate and property affected by such failing trust or trusts one-half to the corporation, The Rector, Churchwardens and Vestrymen of Trinity Church, Rockaway, in the county of Queens, and to its successors and assigns forever, and the other one-half to the town of Hempstead, to be kept as a fund for

the support of the poor of said town, and to be known as 'The Hewlett Fund.'"

Upon the trial the court held the trust for the "Hewlett Academy" was void and that both the devise and bequest to the town of Hempstead for the support of the poor were void. The counsel for the town had claimed that under the prior provisions of the will there had been an equitable conversion of all the real estate of the testator and that as personalty the town could take.

The estate consisted of quite a large amount of real and personal property. ' The town appealed and the General Term affirmed the invalidity of the trust for the "Hewlett Academy" and that trust is recognized as invalid by all parties. It also held that the bequest to the town was valid, but that there was no equitable conversion and consequently the town could not take the real estate. Counsel for the town does not now claim that it has power to take lands by devise.

The executors and next of kin appeal here from the modification of the judgment by the General Term, and the town appeals from that portion of the judgment which affirmed the Special Term as to the real estate which prevents the town from profiting by the devise.

In the view we take of the case it becomes unnecessary to examine the question of equitable conversion. No question is made as to the validity of the bequest of one-half of the residue of the estate of the testator to the rector etc., of Trinity Church, and the matter left for our consideration relates entirely to the validity of the bequest of the other half to the town of Hempstead. The first inquiry is as to the intention of the testator, and having determined that, the question then arises whether the same can be carried out as prescribed by the testator consistently with the rules of law.

What then did the testator intend by the language of this bequest? Did he refer to those persons only who would answer the statutory definition of poor, for whose support the town would raise money as provided by statute, to be expended by its officers elected or appointed for that purpose? Or did

he mean that broader class of people who, while not blind, lame, old or impotent so as to be unable to work, would yet, in general estimation, be regarded as fit subjects of individual charity on account of their poverty? People, in other words, who would have no statutory ground to ask for relief from the town officers, but who, from the necessities of their case could appeal with almost irresistible force to the generosity of the charitable?

I think it was the broader class. It seems to me that the testator had in mind that persons answering such description should be relieved as far as the funds provided by him would permit, and in such manner as to show that the gift was from his bounty, and that the charity flowed from his fund to the recipient in each individual case. He did not wish the special character of this fund to be lost by the simple addition of that amount to the town moneys raised for the support of the statutory poor, but every time an individual was relieved by moneys arising from it he wanted that individual to feel that he was relieved by the bounty of the testator.

I reach this conclusion from an examination of the language of this will. He gives one-half of the residue of his estate to this town, to be kept as a fund for the support of the poor of said town, and to be known as the "Hewlett fund." Its special character would be lost as a mere addition to the moneys raised by the town. It would go into the hands of the town officers precisely like the moneys raised by taxation, and would substantially form a part thereof, and it would be paid out by them the same as such moneys, and in that way its identity as the "Hewlett fund" would be ignored.

The recipient of the public alms of the town would probably recognize nothing of the difference in source from which any part of the moneys came, but the whole would be regarded as provided by the town and raised by taxation.

The testator evidently attached some importance to the naming of the fund, and to its separate preservation as the Hewlett fund, and it can only be, as it seems to me, because he was desirous of perpetuating his name among the poor of

the town as their benefactor to the extent of that fund. To mingle its income or its principal with the town moneys, and to pay it all out indiscriminately as town moneys raised by taxation would, as I think, seriously impair the fulfillment of that desire.

Again, I think the natural inclination of an individual would be to the broader class, because otherwise the gift is really not to the poor, but to the town, to aid it in the discharge of its own statutory duty, and in that way to lessen the taxes on the community at large. The taxpayers of the town may not all answer the description of rich men, but they certainly would still less answer the description of the poor of the town, and yet the gift would be to the taxpayers in effect, if the other interpretation were adopted. It would be to them in effect because the probable and natural result of such a bequest would be, not to make an addition to the fund available for the support of the town poor by just the amount of the gift, but to decrease by just that sum the amount which would otherwise be raised by taxation. Language in some respects, like that used in this will, has been held in England to create a charitable trust fund to be expended by the corporation in aid of the poor and not of the poor rates. Some of the English cases held that the fund was intended to be distributed to the poor to the exclusion of those who were town charges, and some held that the distribution was intended to be indifferently to both classes, but not in exoneration of the poor rates. These cases were cited by counsel for the executors, and will be found in the synopsis of his brief by the reporter.

I think, too, that this fund was given in trust and in perpetuity to the town, to be kept as a fund, and the income only to be used for the purpose indicated in the will. How could it be kept as a fund which was to be known as the Hewlett fund, if the principal were to be paid out at any time? To be kept as a fund under the circumstances of this case and where the gift is to a corporation, must mean to be perpetually kept as a fund. The fact that the word trust is not used is of no great importance. The language which is used imports necessarily

that the income only of the gift is to be used by the town and for the purpose of doing something which the town is not otherwise legally called upon to do. The town owes no legal duty to the broad class of poor people intended to be benefited by this provision in their favor. And when the bequest is thus made to the town it must be on the trust that it will carry out the purpose of the giver, although it is much broader than any legal liability of its own, and consequently the gift cannot be for its own sole benefit. If not for its own sole benefit, then it must be in trust for the benefit to a greater or less extent of some other person, body or class.

Having reached the conclusion that the testator intended by his will to create a fund to be given in trust to the town in perpetuity, the income only to be used for the benefit generally of the poor of that town, and not to be confined to the class of poor which the town was under a statutory liability or duty to support, we may now inquire whether such intention can be lawfully carried out.

Regarding the questions in this case in the light we do, it is unnecessary to determine whether the town has the legal power to take gifts by bequest absolutely, to be applied by it in its discretion to some one or all of its corporate or administrative purposes, or to take in the same way such gifts in trust, and the income only to be applied to some named corporate or administrative purpose. It may be conceded that it has both powers.

The question still remains whether the trust which the testator has attempted to create is a void trust. In *Shotwell, Exr., etc.*, v. *Mott* (2 Sandf. Ch. 46), a trust quite as vague as is the one under discussion was held to be valid, and if that case were still an authority in this state, we should have no difficulty in upholding this trust so far as the question of an ascertained beneficiary is concerned.

That case was decided soon after the adoption of the Revised Statutes, and it held that they did not apply to charitable uses; but that they were aimed at private trusts and accumulations for posterity; that public trusts and charitable uses

were not within the intention of the legislature or the spirit of the enactment. The trust was upheld under the doctrine of charitable trusts.

The *Shotwell* case was alluded to in *Bascom* v. *Albertson* (34 N. Y. 584, 609), by Porter, J., and shown to have been overruled, and in *Holmes* v. *Mead* (52 N. Y. 332, 337), Allen, J., maintained that it had never been accepted by the profession.

It would be quite inappropriate to now repeat the history of the contest in this state upon the question whether the English doctrine of charitable uses ever prevailed here. A general review of that contest was made by the late Judge Rapallo, in the recent case in this court of *Holland* v. *Alcock* (108 N. Y. 312), and his opinion leaves nothing to be added on that subject.

That case leaves the doctrine no longer in doubt that to constitute a valid trust there must be a defined beneficiary, and the absence of such is as a general rule fatal to the validity of a testamentary trust. Is there any such beneficiary named or to be found in this will? The learned counsel for the town says there is, and founds his assertion upon the claim that the beneficiaries are composed of the class defined by law and are limited to such poor persons as the town is now or may from time to time be compelled to support. But we hold that the testator did not intend to limit his charity by any such boundary. His intention was, as we have already stated, to embrace within his charity a much broader, while at the same time a much less well defined class, depending very greatly upon the individual views of the person or persons who, for the time being, exercised the trust, and we say to such an extent is the power of choice vested in the trustee, that no one could claim the enforcement of the trust in his own favor or in favor of others. The beneficiaries are neither named nor capable of being ascertained within the rules of law applicable to these cases. I think this is now necessary in order to create a valid trust.

The case of *Power* v. *Cassidy* (79 N. Y. 602) is no authority for the validity of this trust. That case is authority for the

proposition that a testator may confer upon his executors or trustees the power to divide a bequest or devise among such persons as they may select from certain classes which are desig-nated by the testator, where such classes are sufficiently iden-tified, described and limited as not to render the devise or bequest void for uncertainty. It was also therein held that a description of the beneficiaries by the testator as "such Roman Catholic charities, institutions, schools and churches capable of taking by devise and bequest in the city of New York," as the majority of his executors should decide, and in such propor-tions as they should think proper, was sufficiently definite to be valid. The necessity of an ascertained beneficiary was recog-nized. The will simply gave a power to the executors to decide which should have the property or money once for all, and in what proportions, out of a class sufficiently described and identified in the will so as not to render the devise or bequest void for uncertainty. That is a very different power from the one attempted to be conferred by this will, for here the bene-ficiaries are not capable of definite ascertainment, but depend forever upon the personal choice of a trustee or trustees, who may give to A to-day and refuse to give to him next week under precisely the same facts. Others may have come under the observation of the trustees in the meantime, who are, in their judgment, even more than A, proper objects of the charity of the testator. No definite class is described, limited or iden-tified in the will under consideration. Judge Rapallo, in the case of *Holland* v. *Alcock* (*supra*), speaks of this case of *Power* v. *Cassidy*, and says that it was regarded as going a great ways in holding the beneficiaries sufficiently defined or capable of ascertainment, and the court in other cases since that has announced that the decision was not to be extended. (See *Prichard* v. *Thompson*, 95 N. Y. 76.)

We are entirely convinced that a bequest at this day to a town in trust in perpetuity for the benefit of the poor of the town, not confined to those for whose support the town is under a statutory liability, is invalid for the want of an ascertained beneficiary.

The support of those persons who do not fall within the description of persons for whose support the town is under any statutory or other legal obligation, is not so germane to the purposes of town organization as to make a trust for that object on the part of the town valid. The fact that the bequest is to a town does not overcome the fatal objection of the want of a beneficiary ascertained or ascertainable, and no function of a town as a corporation, either for corporate or administrative purposes (whatever the distinction may be) is subserved by a bequest for the support of the poor for whose support it is under no legal obligation to provide, either in whole or in part.

Special grants of power have been supposed necessary in order to enable cities and villages to act as trustees of property given for charitable purposes, including the relief of distress, and the absence of any such enabling statute in the case of towns is quite potent evidence that they have no such power. (Chap. 318, Laws of 1840, § 2; chap. 261, Laws of 1841, an addition to the above act.)

In holding this bequest to the town of Hempstead to be a trust, I have not overlooked the cases cited by counsel, which decide, as he claims, that gifts of this nature to a town are absolute. In *Williams* v. *Williams* (8 N. Y 525), the bequest to the trustees of the church in the village of Huntington and their sucessors, in trust for the support of a minister, was held valid for reasons given by DENIO, J., in his opinion. He held that the gift was for one of the purposes for which the corporation was created, and that it was not necessary to the validity of a bequest to a religious corporation that it should be given generally for all the purposes for which it may be legally used; that the corporations of a religious nature were authorized to take property for the use of the society, " or other pious uses," and that a benefactor might apply his bounty to the whole or any one or more of the various purposes for which the corporations were authorized to hold property.

Thus, in the case at bar, if the bequest had been for the support of those poor persons for whose maintenance the town

was legally liable to provide, it might in that case be claimed perhaps that such bequest was for one of the purposes for which the town was organized or incorporated, and was, therefore, valid.

The objection that the legacy was illegal and creating a perpetuity contrary to the provisions, 1 R. S. 773, § 1, was surmounted by Judge DENIO in the *Williams* case, by showing that religious corporations, before the Revised Statutes, were authorized to hold real and personal estate in perpetuity, and that the power was not taken away by the adoption of those statutes. That as such corporations had the power to take and hold property in perpetuity for the purpose of their incorporation, it was legal for a donor to prescribe, by way of limitation, that his gift should be kept and preserved so as to subserve the purposes which the corporation was created to promote, and that it was no more than to declare that the property should be devoted to the objects which the legislature had in view when providing for the existence of the corporation.

The learned judge was also of the opinion that the statutes concerning expectant estates in personal property were not applicable to property bequeathed to one of these charitable corporations to be applied to any corporate purpose; the legislature never intended that the statutes should reach so far as to include corporations holding property which they had a right to hold for corporate purposes, although the property was to be held in perpetuity and the income only applied to one or more of such purposes.

In *Adams* v. *Perry* (43 N. Y. 487, 500), GROVER, J., was of the opinion that the reason why gifts to such corporations were valid, was that by their charters they were authorized to take and hold property, and were thus exempted from the operation of the law regarding the suspension of the absolute power of alienation of real and the absolute ownership of personal property. It is seen, however, that the gift in order to take effect as an absolute one, must be for some one or all of the purposes for which the corporation was created. If the gift were to the town for the purpose of investing the prin-

·cipal and applying the income to the support of an opera company, it could not be said that the gift was an absolute one and that the town took it with the right to apply it to any of its corporate purposes. It would be a gift in trust to apply it to certain purposes not corporate, and the trust and the gift would alike be void.

It is this circumstance that the gift in this case is not for ·corporate purposes, which takes it out of the principle upon which the cases cited were decided. The cases of *Wetmore* v. *Parker* (52 N. Y. 459); *Le Couteulx* v. *Buffalo* (33 id. 333); *Vail* v. *Long Island Railroad Co.* (106 id. 283), were all instances of a gift to a corporation having power to take for the purpose that the gift was intended, and hence a direction accompanying the gift that it was to be used only for a corporate purpose, or that the income only was to be used did not ·create a trust. It was simply saying that the gift was for the purpose of aiding the corporation in the discharge of some of' its corporate functions.

It has been argued that where a legacy is given to a corporation having power to use money for several and distinct corporate purposes, to be applied to one corporate purpose only, the gift was not absolute, but was in trust to be applied as directed by the donor. Whether that be true or not, is immaterial here. The purpose of the gift in this case was outside ·of any corporate or administrative purpose.

Thus far I have considered the town of Hempstead as in the same condition as any other town in the state. Its counsel, however, claims that by chapter 591 of the Laws of 1870, providing for the custody of moneys arising from the sale of its ·common lands and for the election of a treasurer of the town, a distinction is made in favor of this town which is material in the decision of the case before us.

We have read the act carefully and do not think it has any material bearing on the question discussed herein.

We reach the conclusion that the gift to the town was not an absolute one, but in trust for purposes which were not corporate or administrative, and that the town could not take it

for that reason, and the trust itself is void because of a lack of any ascertained or ascertainable beneficiaries to enforce the same.

The judgment of the General Term, so far as it modifies that of the Special Term, should be reversed, and that of the Special Term affirmed, with costs to the parties as directed by the judgment of the General Term.

All concur, except RUGER, Ch. J., FINCH and GRAY, JJ., dissenting.

Judgment accordingly.