HOLMES, Appellant, vs. WALTER and others, Respondents.

*June 2—June 18, 1903.*

*Wills: Construction: Testamentary trusts: Trusts and trustees: Duties of trustee: Statutes: Suspension of power of alienation: Trusts void for uncertainty.*

1. The rule that judicial construction is neither required nor permissible unless uncertainty of sense is clearly apparent applies to wills the same as to other instruments.

2. Where the field of construction is entered upon respecting a will, the rule that a meaning is to be preferred which will support instead of defeat it applies as strongly to testamentary trusts as to any other testamentary disposition of property.

3. When the title to property is conveyed to one for the benefit of another, with active duties to be performed by the grantee with reference to the subject of the conveyance, evidencing an intention that the primary use of the property shall be in the grantee, an active trust is created whether any technical words to that effect are used or not.

4. In the circumstances above instanced, waiving that of the primary use being in the grantee, his duties in respect to the title not requiring the right to the possession and profits to any extent, a passive trust is created as to the title, and a power in trust in respect thereto is vested in the grantee if the duty to be performed may legitimately be the subject of such a power under the statutes.

5. A trust created for the purpose mentioned in subd. 5, sec. 2081, Stats. 1898, is valid if fully expressed and clearly defined upon the face of the instrument creating it, unless the same violates the prohibition against suspending the absolute power of alienation.

6. A purely passive trust is annihilated as soon as created, by the operation of the statute, sec. 2075, Stats. 1898, causing the legal title to vest with the beneficial right.

7. The statute operating upon passive trusts in the manner above indicated does not affect active trusts whether they be valid or invalid. If the former, they are to be executed according to the scheme of the creator thereof; and if invalid the property is entirely unaffected by the instrument and goes under the residuary clause of the will in the absence of any other direction contained therein, and if there be no such residuary clause or direction it goes as intestate estate.

8. A trust is fully expressed and clearly defined within the meaning of the statute when the general purpose thereof is clearly within the statute, the general scheme of the trust is made evident, and the subject of the trust and persons to be benefited are made sufficiently clear that a court of equity can judicially determine the same and superintend the execution of the trust.

9. Where a trust has no express provision for its termination it is not void on that account if it does not offend against the statute as to suspending the absolute power of alienation.

10. The law prohibiting the suspension of the absolute power of alienation does not apply to personal property in any case, and it does not apply to realty where the trustee has the absolute power to sell the same, or where the beneficiaries are all *in esse* and can, by uniting, convey the whole title.

11. When an instrument creating a trust does not in terms or by necessary implication prohibit the termination thereof, if all parties who are or may be interested are in existence and are *sui juris,* they may, by uniting, terminate the trust subject to such restraints as are contained in secs. 2089, 2091, Stats. 1898.

12. The mere fact that no time is stated in the creation of a trust for its termination, does not render it void for uncertainty.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to construe the will of George Walter, deceased, which, so far as material to the question raised, is in the following language:

"First. After the payment of my just debts and funeral expenses, I give, devise and bequeath to my beloved wife *Mary,* in trust for herself and my children, all of my estates, both real and personal with full power to continue my business if for the best interest of my estate.

"Second. I hereby nominate and appoint my friend John J. Sherman the executor of this my last will and testament," etc.

The testator left surviving the plaintiff, who was his widow, and the following children: *George Walter, Laura L. Roemer, Martin T. Walter, Lena C. Walter, Anna M. Walter, Chas. W. Walter, Henry F. Walter, Rose T. Walter,* and *Edgar B. Walter,* all being minors except one, and properly made defendants. Such proceedings were duly had in the settlement of the estate that the property was assigned in due form to *Mary Walter* in trust, according to the language of the will. She accepted the trust. Subsequently she resigned, and the county court appointed defendant *Christian Walter* in her place. He accepted the trust and took possession of the property. He thereafter managed the same without question of his right in the matter till this action was commenced. Such property consisted mainly of a brewery in operation, and the personal property in and for use in connection there-

with. The value thereof was about $100,000. It was vital to its preservation that the brewery should be kept in continuous operation. It was not susceptible of division by conversion into money. The claim of plaintiff was that no valid trust was created by the will; that by a proper construction of the instrument she took the whole title and beneficial interest in the property. The claim on behalf of the defendants was also that the will did not create a valid trust, though there was an attempt to do so, and that the legal result was to vest the full title to the estate in the mother and children in equal portions.

The court decided as follows, in effect: The testator had no intention of vesting the whole beneficial interest in his estate in his wife. He expected that the harmonious relations theretofore existing in his family would continue. He knew the character of his property was such that the best results for his family could be obtained by operating the same without any divided management. He could not foresee whether it would be for their best interests to keep the property in specie or convert it into money and invest the same, or divide the proceeds at some time in the future. He thought best to leave a choice of courses to his wife and children. He did not leave the matter, however, exclusively to his wife. He directed the business to be continued if thought best. His purpose was that the business should be continued if all agreed to that and such course should seem to be for the best, and that if a decision should be at any time arrived at not to continue the business, the property should be sold and the proceeds reinvested or divided, as might seem best. His idea was that so long as the property should be kept together it would be best to have one of the members dominant in the management thereof. He left the precise details of the trust to be determined by circumstances as they might arise. The purposes of the testator are not set forth with sufficient particularity to satisfy the statute. The will created a mere

passive or dry trust. Therefore it must be considered as if there were no trust at all and the property was given direct to the beneficiaries. Judgment was ordered and rendered accordingly, and the plaintiff appealed.

For the appellant there were briefs by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondents there was a brief by *Humphry Pierce,* attorney for *Walter,* trustee, and the major child of testator, and *Thomas H. Ryan,* guardian *ad litem,* for the minor children of testator, and oral argument by *Mr. Pierce.*

MARSHALL, J. The claim is made by appellant's counsel that no trust was attempted to be created by the will; that the purpose of the testator was to bestow all of his estate upon his wife with full power to do therewith as she might see fit. That idea is urged upon us with much earnestness, and rules for judicial construction are invoked to support it. As we view the will we cannot reach the point where judicial construction is permissible. There is a tendency to commence dealing with testamentary instruments at once and almost as a matter of course upon their coming within the reach of judicial administration, as if construction thereof were necessary, or at least permissible, while the true rule is that construction never begins until uncertainty of sense is pretty clearly apparent. In this case there is no such uncertainty. Any attempt to construe the instrument would involve an effort to put meaning into the words contrary to their plain import, and to create uncertainty instead of the opposite. "I give, devise and bequeath to my beloved wife Mary, in trust for herself and my children, all of my estates," etc., "with full power to continue my business if for the best interest of my estate." What can be plainer than those words as regards the mere intention to create a trust, leaving out of view the question of the validity of the trust for the time being. The devise and bequest of property was not made absolutely to the

trustee, but "for herself and my children." The property was not merely conveyed to the trustee to the use of herself and the children, all to immediately possess and enjoy as primary takers; but it was conveyed to the widow for herself and the children, with full power vested in her to operate the property, or to convert the same and invest the fund in other property in her discretion, she taking, primarily, the use thereof. Every word used in the will is in harmony with the one theory that the testator intended to vest the legal title to the property in the trustee with the fullest discretionary authority over the same, as regards how best to devote it to the purpose of the trust. It was limited only by the words "for herself and my children," plainly indicating that all were to share equally in the benefits of the trust.

Counsel refer to *Davies v. Davies,* 109 Wis. 129, 85 N. W. 201, as if that were an authority for holding that when property is plainly given to one in trust for that one and others, with absolute power of control over the same as regards the manner in which the same shall be managed for the beneficiaries, the element of trust, though technical words in respect thereto be used to express it, may by construction be eliminated. That case is very far from supporting such idea. The Davies will was uncertain to the highest degree susceptible of being made certain by construction. There was no question about that. The difficulty was in reading out of the ambiguous instrument the idea which the testator had in mind when he signed it. The court did not reach the final result by discarding the element of trust. That was retained, and amplified, so to speak, by construction, so as to disclose some reasonable meaning within the legitimate scope of the testator's language. No one, it seems, can read the decision there rendered and gather, legitimately, the impression that if Dr. Davies had left his property to his wife in trust for herself as well as the other objects of his solicitude mentioned in his will, there would have been any difficulty calling for con-

struction as regards the element of trust itself. The court did not say that the doctor failed to create a trust, or did not intend to create one. It held that he did create a trust, but that he intended to make his wife one of the beneficiaries thereof as well as the other persons named as such, though failed to express the purpose so that it could be discovered without the aid of judicial construction. We have no such difficulty here. There is not a circumstance, that we can discover, sufficient to furnish a well-grounded suspicion that the testator did not intend to create a trust. Whereas, in the *Davies Case* the literal sense of the trust clause was broadened, letting in Mrs. Davies as a beneficiary, it appearing to be manifest, under the circumstances, that the testator did not intend to leave her entirely unprovided for and destitute and at the same time impose upon her the duty of administering his estate, which was small, for the benefit of others, here the idea is that we should eliminate altogether the element of trust, though it is clearly expressed, by taking the language of the will literally, to accomplish the disinheritance of all the testator's children, though he had ample property to provide for the wife and his children as well. There construction was successfully invoked to avoid an unnatural meaning. Here it is invoked to create one, as we look at the matter.

Our views so far are in harmony with those of the learned circuit judge as regards whether the testator intended to create an active trust. In an elaborate opinion he pointed out in a general way what the testator purposed doing, all indicating such a trust, winding up with these expressions:

"In any event the business could be conducted, the estate managed, disposed of, its proceeds invested and divided—transactions likely to run through a series of years—with greater convenience and economy, in the name of a single person acting as trustee, than by the ten heirs acting individually, some of them for some years by guardians. Such were very probably some of the considerations *which moved the testator*

*to invest his widow with the entire estate,* 'in trust for herself and my children,' leaving the conditions of the trust to be determined afterwards, in the manner already indicated, as future circumstances should seem to require."

The last clause of the quoted language, looking at the opinion as a whole, must be construed as holding that the testator left to the trustee broad discretionary authority as to how best to execute the trust in order that her administration might be adapted to changing circumstances, a very common. feature in a trust created by will for the benefit of the testator's family,—a feature almost necessary to such a trust.

Enough has been said, without going further into a detailed consideration of the learned judge's opinion and decision, to show that he held that the will created a trust of an unmistakably active character. The legal title to the property was, by appropriate terms, vested in the trustee, and she was empowered to control and manage it, as the circuit judge suggests, for the reason, among others, that it was of such a character that the interests of all concerned could be best subserved by avoiding a divided management. The statement of the learned court that the testator intended to vest in his wife the title to the property with power to manage it, is, of course, a distinct decision that he intended to create a trust. It negatives any purpose that the beneficiaries should take the title as tenants in common. Notwithstanding the very active character of the trust thus indicated, the learned circuit judge said that the trust was passive in character. It would not seem necessary to stop to more than suggest that a trust cannot be at the same time both active and passive. If it has presently the essentials of one, that excludes the possibility of its having presently the essentials of the other. The prime requisite of a passive trust is that the trustee is made in form. a mere holder of the legal title, the right to the possession and the profits being in another. If there are any active du--

ties for the testator to perform with respect to administering the property, and the primary use be expressly or impliedly, by reason of such active duty, vested in the trustee, the trust is necessarily active and not affected by the statute which would otherwise execute the use and thus vest the legal title in the equitable owner. That rule is elementary. *Strong v. Gordon,* 96 Wis. 476, 71 N. W. 886; *Goodrich v. Milwaukee,* 24 Wis. 422; *Riehl v. Bingenheimer,* 28 Wis. 84; *Sullivan v. Bruhling,* 66 Wis. 472, 29 N. W. 211; 2 Underhill on Wills, § 773; *Bean v. Bowen,* 47 How. Pr. 306; *Thomson v. Thomson,* 55 How. Pr. 494; *Scofield v. St. John,* 65 How. Pr. 292; *Ward v. Ward,* 105 N. Y. 68, 11 N. E. 373; *Bennett v. Garlock,* 79 N. Y. 302. The law in that regard is stated in Perry on Trusts, § 305, thus:

"If any agency, duty, or power be imposed on the trustee, as by limitation to a trustee and his heirs to pay the rents, or to convey the estate, or if any control is to be exercised, or duty performed by the trustee in applying the rents to a person's maintenance, or in making repairs, or to preserve contingent remainders, or to raise a sum of money, or to dispose of the estate by sale,—in all these, and in other and like cases, the operation of the statute is excluded, and the trusts or uses remain mere equitable estates."

The learned circuit judge reached the conclusion that the trust in question was a simple or passive trust, after deciding that it was an active trust, because, as one of the latter, it was void for uncertainty, using this language: "The words employed to express such trust fail to do so with such certainty and particularity as are necessary under the statutes which govern the subject," referring, of course, to subd. 5, sec. 2081, Stats. 1898, which provides that express trusts may be created "for the beneficial interests of any person or persons, *when such trust is fully expresed and clearly defined* upon the face of the instrument creating it," etc.

It is needless to say that if a person, in attempting to cre-

ate an active trust, fails by reason of the trust not being expressed with sufficient fullness and definiteness, that offers no opportunity for the statute of uses to operate and vest the title to the property involved in the intended beneficiary discharged of the trust. The statute which in a proper case so operates, sec. 2075, Stats. 1898, never concerns active trusts, whether they are valid or invalid. If an attempt is made by will to create such a trust, which fails for want of certainty, the property, instead of vesting in the beneficiary as if the trust were passive in character, will fall into the residuum of the estate and go under the residuary clause of the will, if there be one, otherwise it will go as intestate property. Redfield, Wills, 410, note; Tif. & Bull. Trusts & Trustees, 57, 58. The condition which will render an express trust inoperative and carry the legal with the equitable title direct to the intended beneficiary, is possession and enjoyment by him of the primary use. If there is vested in the trustee, however, some duty to perform, merely as regards the title, which may be performed consistent with that being in the beneficiary subject to performance of such duty, the statute executes the use just the same, merging the legal with the equitable title in the beneficiary, the trust, as a mere power, remaining effective under the statute on the subject of powers. That, however, does not affect this case because it is evident that the trust here concerns more than the mere title, and that the immediate use and possession was not intended to go to the beneficiaries. The primary use of the property was evidently designed to go to the trustee, as the circuit judge held in his opinion and decision. The trust cannot therefore be sustained solely as a power, nor can it be held annihilated by the statute of uses. It is good because it is expressed with sufficient fullness and definiteness to satisfy the statute, or it is void for infirmity in that regard. In the latter case the title must be held to have passed, not to the beneficiaries under the will discharged of the trust, but, as before indicated, to

the heirs of the testator as intestate estate, there being no residuary clause in the will.

The remaining question to be considered is whether the trust is void for uncertainty. The suggestion, in effect contained in the opinion of the learned circuit judge, that the particular manner of executing the trust is not pointed out and that such feature constitutes a fatal infirmity, cannot be sustained. Such matters are commonly left to the discretion of the trustee. The statute, subd. 5, sec. 2081, Stats. 1898, is substantially an enactment of the common law as regards when equity will enforce a trust. It requires that the trust shall be fully expressed and clearly defined upon the face of the instrument creating it, in order that the court may deal with it if necessary. If the trust is so fully expressed and defined, all else may be left to the discretion of the trustee. Failure to fully comprehend and give effect to that has led to many adjudications seemingly controlled by the idea that trusts are things to be avoided if some reasonable ground can be found to do so, instead of being enforced if that can be done consistently with rules of law. The rule that prefers a construction of a will rendering effective an attempt to create a trust to one that will defeat it, and also prefers a construction that will sustain testacy to one that will create intestacy, applies just as strongly to testamentary trusts as to any other testamentary disposition of property. Modern decisions indicate a growing appreciation of the judicial duty to uphold testamentary dispositions of property, made through the medium of trusts, instead of searching for reasons for avoiding them, or dealing with them with any degree of disfavor. Judge REDFIELD, in his work on Wills, vol. 2, p. 385, noted, at the time he treated the subject, that:

"The chief reason why courts, in the later cases, have felt reluctant to admit uncertainty as a ground for avoiding the formal disposition of property, will be found in the very general feeling in all judicial tribunals, whether in this coun-

try or in England, that the earlier decisions upon this point were, many of them, unreasonable and indefensible, and not a few of them verging very closely upon the ludicrous and the absurd."

Courts, as a rule, hold that where there is no indefiniteness of beneficiaries to enforce the trust, and no indefiniteness of subject or object of the trust, the statute is satisfied, because in such circumstances, through its equity powers, the court can effectively deal with the matter. That idea can be found most frequently advanced and applied in respect to public trusts, where the rule of certainty governing private trusts was applied at least as to certainty of beneficiaries. *Webster v. Morris,* 66 Wis. 366, 371, 28 N. W. 353; *McHugh v. Mc-Cole,* 97 Wis. 166, 72 N. W. 631. The rule of the English cases as regards when a trust is stated with sufficient definiteness that a court of equity will enforce it, is substantially the rule laid down in the cases cited. It is when the object or purpose and the person are pointed out with fullness and definiteness. All else may properly be left to administrative discretion. *Pierson v. Garnet,* 2 Brown's Ch. 226; *Robinson v. Waddelow,* 8 Sim. 134; *Gloucester v. Wood,* 3 Hare, 131. In *Roe v. Vingut,* 117 N. Y. 204, 22 N. E. 933, it was in effect held that certainty of general scheme, and of the person or persons to be benefited, satisfies the statute. That will be easily recognized as the rule laid down by this court in the cases above cited. PECKHAM, J., said:

"Upon such perusal [of the will], if a general scheme can be found to have been intended and provided for in the instrument, and such general scheme is consistent with the rules of law, and so may be declared valid, it is the duty of courts to effectuate the main purpose of the testatrix."

In that case the court rested from searching for essentials of certainty upon discovering a clear and fully expressed purpose to create a trust, the subject of the trust, the object thereof, and the persons to be benefited. In *Vernon v. Ver-*

*non,* 53 N. Y. 351, it was held that, as regards the object of a trust, it is sufficient if language is used clearly indicating that it is one within the terms of the statute. In *Fosdick v. Hempstead,* 125 N. Y. 581, 26 N. E. 801, a bequest to the town for the benefit of the poor of the town was inferentially held free from uncertainty except as regards the beneficiaries, though the language used to create the trust left the manner of administering the subject thereof wholly to the discretion of the trustee. In *Goodrich v. Milwaukee,* 24 Wis. 422, the trustee was empowered to hold the property for the sole use and benefit of certain persons named, with general powers of administration, somewhat under the direction of one of the beneficiaries. The subject of the trust, the purpose or object, specifying those to be benefited, were stated with fullness and definiteness, but as to many matters of administration the instrument was silent.

Testing the trust in question by what has been said, what is there about it that is not fully expressed and clearly defined? All the essentials of fullness and definiteness are easily discovered. The subject of the trust, the property, is described as all of the estate of the testator, both real and personal. The purpose or object of the trust is likewise clear. It is to enable one person, the trustee, to control, care for and in all things administer the property, and devote the same to the benefit of others. The persons to be benefited are unmistakable, being the widow and all the children of the testator.

It is suggested that the trust is indefinite in that the time when it is to be terminated is not mentioned. The mere fact that no limitation to the existence of the trust is stated is not an element of indefiniteness under the statute since the power of alienation is not unduly suspended. The trustee is empowered to sell the property at any time, so there is no infirmity as regards suspending the absolute power of alienation. If the trust were necessarily perpetual as to the converted fund, that would not offend against any law. *Becker*

*v. Chester,* 115 Wis. 90, 91 N. W. 87, 650. Again, since the will contains no prohibition, express or implied, against terminating the trust, and all parties that can be interested are *in esse,* when all are *sui juris* they can by uniting cause its termination, subject to the restraints contained in secs. 2089 and 2091, Stats. 1898. Perry, Trusts, 920; Lewin, Trusts, 578; *Ruggles v. Tyson,* 104 Wis. 500, 521, 81 N. W. 367; 1 Hilliard, Real Prop. 461; *McWilliams v. Gough,* 116 Wis. 576, 93 N. W. 550. The mere fact that the trust is in terms perpetual does not affect it. That feature is not objectionable so long as it does not offend against the prohibition against suspending the absolute power of alienation. Perry, Trusts, § 23. The books furnish many examples of trusts having the feature under discussion, without a suggestion of the invalidity of the trust on the ground of uncertainty. In *Crockett v. Crockett,* 2 Phill. 553, the property was given to the wife "for herself and children." In *Raikes v. Ward,* 1 Hare, 445, the gift was to the testator's wife "to the intent she may dispose of the same for herself and our children in such manner as she may deem most advantageous." In both cases the claim was made by the children that the will created a joint tenancy, but it was held otherwise, and that their interests were only equitable, the primary taker being a trustee. In *Fosdick v. Hempstead,* 125 N. Y. 581, 26 N. E. 801, as we have before seen, the bequest was general, for the benefit of a class. In *Goodrich v. Milwaukee,* 24 Wis. 422, the same feature characterized the instrument. In *Barnard v. Crossman,* 54 Hun, 53, 7 N. Y. Supp. 275, the terms of the devise were to one to hold for the benefit of his children. The instrument was held to create an active trust. No doubt was suggested as regards the trust being expressed with sufficient fullness and certainty.

Thus it will be seen that, when we put aside as immaterial the suggestion that no time is mentioned in the instrument under consideration for the termination of the trust, and the

suggestion that the manner of administering the trust is not therein definitely prescribed but is left to the discretion of the trustee, and appreciate that all that is necessary to a valid active trust under the statute in respect to fullness and definiteness is that it shall clearly appear to have been created for one of the authorized objects, that the general scheme thereof shall fully appear, that the subject of the trust and the persons to be benefited shall be definitely pointed out, all difficulty in regard to whether the trust in question satisfies the statute vanishes.

The learned counsel for appellant claims that if the trust is to be sustained, as we have indicated that it must be, the appellant is entitled to administer it. That matter does not appear to be before us. The record shows that appellant resigned her position as trustee to the proper county court; and that in due form of law pursuant to sec. 4027, Stats. 1898, such court appointed as her successor *Christian Walter,* and he filed his bond and accepted the trust. That operated, by force of the statute, to vest in him the legal title to the trust property, the same as if his name were inserted in the order of the county court assigning the property to him as trustee in the first instance, in the terms of the will, instead of to appellant.

The result is that the judgment must be reversed and the cause remanded to the trial court with directions to enter a decree establishing the legal title to the property involved in *Christian Walter* as trustee for the appellant and the children of the testator for the purposes mentioned in his will, in harmony with the order of the county court assigning his estate in trust.

*By the Court.*—So ordered. The taxable costs of both parties in this court will be paid out of the trust estate.